# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>The Roman Catholic Diocese of Rockville Centre, New York,<br><br>        Debtor.<br><br>――――――――――――――<br><br>The Roman Catholic Diocese of Rockville Centre, New York,<br><br>        Plaintiff,<br><br>    v.<br><br>ARROWOOD INDEMNITY COMPANY fka Royal Insurance Company, also fka Royal Globe Insurance Company; *et al*.[1]<br><br>        Defendants. | Chapter 11<br><br>Case No. 20-12345-scc<br><br><br><br><br><br>Adv. No 20-01227-scc |

## MOTION FOR WITHDRAWAL OF THE REFERENCE

---

[1]   The other defendants are Certain Underwriters at Lloyd's, London & Certain London Market Companies namely Allianz International Ltd., Ancon Insurance Co. (UK) Ltd., Assicurazioni Generali T.S., British National Insurance Co. Ltd. formerly known as British National Life Insurance Society Ltd., CX Reinsurance Co. Ltd. formerly known as C.N.A. Re of London, Compagnie d'Assurance Maritimes et Terrestres now known as Allianz Global Corporate & Specialty (France), Dominion Insurance Co. Ltd., Excess Insurance Co. Ltd., Lexington Insurance Co., London & Edinburgh General Insurance Co. Ltd., Sovereign Marine & General Insurance Co. Ltd., St. Katherine Insurance Co. Ltd., Storebrand Insurance Ltd., Taisho Marine & Fire (UK) Ltd., Terra Nova Insurance Co. Ltd., Tokio Marine & Fire, (UK) Ltd., Turegum Insurance Co. Ltd., Unionamerica Insurance Co. Ltd. and Yasuda Fire & Marine (UK) Ltd.; Allianz Underwriters Insurance Company; Associated International Insurance Company; Colonial Penn Insurance Company; Fireman's Fund Insurance Company; Interstate Fire & Casualty Company, National Surety Corporation and Doe Insurance Companies 1 through 10,

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ....................................................................................................................7

JURISDICTION AND VENUE ............................................................................................8

RELEVANT FACTUAL AND PROCEDURAL HISTORY .......................................9

RELIEF REQUESTED............................................................................................................9

ARGUMENT .........................................................................................................................10

I.      The Motion Is Timely Filed.................................................................................10

II.     There Is Cause to Withdraw the Reference ....................................................11

    A.      The Bankruptcy Court Cannot Enter a Final Order on the Claims......................11

        1.      Article III of the U.S. Constitution Limits the Bankruptcy Court's Authority to Decide Matters of Private Rights ...........................................11

        2.      The Bankruptcy Court's Jurisdiction over the Claims Is Non-Core..........13

    B.      Withdrawing the Reference Immediately Would Serve Judicial Economy .........16

        1.      Denying the Motion Would Increase the Expenditure of Judicial Resources ........................................................................................................16

        2.      Granting the Motion Would Save Judicial Resources ...............................17

    C.      Withdrawal of the Reference Would Not Affect the Uniformity of Bankruptcy Administration....................................................................................19

    D.      Economical Use of the Diocese's and Insurers' Resources.................................20

    E.      Withdrawal of the Reference Would Not Constitute Forum Shopping...............21

    F.      Withdrawing the Reference Will Expedite the Bankruptcy Process ...................21

    G.      The Presence of a Jury Demand...........................................................................22

        1.      The Claims Involve Legal Claims That Must Be Resolved Prior to the Equitable Claims .......................................................................................23

            a.      The Breach of Contract Claims.....................................................23

            b.      The Declaratory Relief Claim.......................................................24

2.  The Claims Involve Factual Disputes ..........................................................25

H.  The Factors All Favor Withdrawing the Reference ............................................. 25

III.  CONCLUSION ...........................................................................................................26

DM3\7199210.1

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*In re Align Strategic Partners LLC*, 2019 WL 2527221 (Bankr. S.D. Tex. Mar. 5, 2019) ..............................................................................................................16

*Allied Prods. Corp. v. Hartford Accident & Indemnity Co. (In re Allied Prods. Corp.)*, 2003 U.S. Dist. LEXIS 2596 (N.D. Ill. Feb. 20, 2003)................................14

*Am. Safety Equip. Corp. v. J. P. Maguire & Co.*, 391 F.2d 821 (2d Cir. 1968) ............18

*AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213 (3d Cir. 2009)........................18

*Baker v. Simpson*, 613 F.3d 346 (2d Cir. 2010).............................................................8

*Baxter v. Sherb & Co., LLP (In re Money Ctrs. of Am., Inc.)*, 2016 U.S. Dist. LEXIS 23051 (S.D.N.Y. Feb. 16, 2016)...................................................11, 13

*Beacon Theatres v. Westover*, 359 U.S. 500 (1959) ..................................................7, 17

*Brown v. Sandimo Materials,* 250 F.3d 120 (2d Cir. 2001)...........................................17

*Calascibetta v. Penson Fin. Servs. (In re U.S. Mortg. Corp.)*, 2012 U.S. Dist. LEXIS 55191 (D.N.J. Apr. 19, 2012)........................................................15

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558 (1990) .......16

*Citigroup Inc. v. VDN Sys., Inc.*, 2008 WL 5274091 (S.D.N.Y. Dec. 16, 2008) ..........17

*Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833 (1986) ............................5

*Corinthian Media, Inc. v. Putnam*, 845 F. Supp. 143 (S.D.N.Y. 1994) ........................17

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457 (S.D.N.Y. 2011)....................................................................... 10-12, 14

*Dev. Specialists, Inc. v. Peabody Energy Corp. (In re Coudert Bros. LLP)*, 2011 U.S. Dist. LEXIS 135990 (S.D.N.Y. Nov. 22, 2011)............................................12

*DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587 (S.D.N.Y. 2012)...................................................................................11, 14

*Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co.*, 130 B.R. 405 (S.D.N.Y. 1991) ...........................................................................................8

*Dynegy Danskammer, L.L.C. v. Peabody Coaltrade Int'l Ltd.*, 905 F. Supp. 2d 526 (S.D.N.Y. Nov. 7, 2012) ...........................................................10, 13

DM3\7199210.1

*In re EMS Fin. Servs., LLC*, 491 B.R. 196 (E.D.N.Y. 2013) ................................................9

*Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25 (2014) ................................................6

*In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665 (S.D.N.Y. 2011) ...................................7

*In re General Teamsters, Warehousemen and Helpers Union Local 890*, 124 F.3d 999 (9th Cir. 1997) ................................................................................................12

*Geron v. Levine (In re Levine)*, 2012 U.S. Dist. LEXIS 12292 (S.D.N.Y. Feb. 1, 2012) ................................................................................................................11

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) ................................................6

*GTFM, LLC v. TKN Sales, Inc.*, 257 F.3d 235 (2d Cir. 2001) ......................................17

*Gumport v. Growth Fin. Corp. (In re Transcon Lines)*, 121 B.R. 837 (C.D. Cal. 1990). ............................................................................................................12

*Hau Yin To v. HSBC Holdings PLC*, 2017 U.S. Dist. LEXIS 28931 (S.D.N.Y. Mar. 1, 2017) ................................................................................................10

*In re Housecraft Indus. USA, Inc.*, 310 F.3d 64 (2d Cir. 2002) ....................................8

*Innovasystems, Inc. v. Proveris Scientific Corp.*, 2013 WL 5539288, *3 (D.N.J. Oct. 7, 2013) ................................................................................................12

*Kentile Floors v. Congoleum Corp. (In re Kentile Floors)*, 1995 U.S. Dist. LEXIS 11421 (S.D.N.Y. Aug. 9, 1995) ................................................................4

*Kirschenbaum v. United States DOL (In re Robert Plan Corp.)*, 777 F.3d 594, 596 (2d Cir. 2015) ................................................................................................13

*Lawrence Group v. Hartford Cas. Ins. Co. (In re Lawrence Group, Inc.)*, 285 B.R. 784 (N.D.N.Y. 2002) ................................................................................14

*In re Lehman Bros. Holdings Inc.*, 502 B.R. 376 (Bankr. S.D.N.Y. 2013) ....................9

*LightSquared Inc. v. Deere & Co.*, 2014 U.S. Dist. LEXIS 14752 (S.D.N.Y. Jan. 31, 2014) ................................................................................................13

*In re Lyondell Chem. Co.*, 467 B.R. 712 (S.D.N.Y. 2012) ........................................6-7

*M Fabrikant & Sons, Inc. v. Long's Jewelers Ltd.*, 2008 U.S. Dist. LEXIS 50247 (S.D.N.Y. June 26, 2008) ................................................................................13

*Michaelesco v. Shefts*, 303 B.R. 249 (D. Conn. 2004) ................................................14

*Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272 (1856) ................5

*In re New York Trap Rock Corp.*, 158 B.R. 574 (S.D.N.Y. 1993) ................................15

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50 (1982) ....................... 5-6

*Official Comm. of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.)*, 295 B.R. 211 (D.N.J. 2003)............................................................................12

*Orion Pictures Corp. v. Showtime Netowrks (In re Orion Pictures Corp.)*, 4 F. 3d 1095 (2d Cir. 1993)....................................................................................*Passim*

*In re Ozier*, 132 B.R. 595 (Bankr. E.D. Ark. 1991).............................................................14

*Pelullo*, 1997 U.S. Dist. LEXIS 12372, at *8-9...................................................................15

*In re Refco, Inc. Sec. Litig.*, 628 F. Supp. 2d 432 (S.D.N.Y. 2008)......................................9

*Residential Funding Co., LLC v. UBS Real Estate Secs., Inc.*, 2015 U.S. Dist. LEXIS 29952 (S.D.N.Y. Mar. 6, 2015)...............................................................13

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 486 B.R. 579 (S.D.N.Y. 2013).....................................................................................................4, 6

*Shalom Torah Ctrs. v. Phila. Indem. Ins. Cos.*, 2011 U.S. Dist. LEXIS 35726 (D.N.J. Mar. 31, 2011).........................................................................................15

*Silverman v. Tudor Ins. Co. (In re Lenders Abstract & Settlement Serv.)*, 493 B.R. 385 (E.D.N.Y. 2013)..........................................................................................14

*Simler v. Conner*, 372 U.S. 221 (1963) (*per curiam*) ...................................................17

*In re Skyline Concrete Floor Corp.*, 410 B.R. 564 (E.D. Mich. 2008)..........................................14

*In re SRC Holding Corp.,* 545 F.3d 661 (8th Cir. 2008) ...................................................6

*Stern v. Marshall*, 564 U.S. 462, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011)...................... 6-7, 11

*Stonewall Ins. Co. v. Nat'l Gypsum Co.,* No. 86 CIV. 9671 (JSM), 1992 WL 281401 (S.D.N.Y. Sept. 25, 1992)................................................................18

*Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568 (1985) ....................................6

*Travelers Indem. Co. v. Babcock & Wilcox Co.*, 2002 U.S. Dist. LEXIS 2477 (E.D. La. Jan. 23, 2002)........................................................................................14

*VWE Grp., Inc. v. Amlicke (In re VWE Grp., Inc.)*, 359 B.R. 441 (S.D.N.Y. 2007) ................4, 10

*Wellman Thermal Sys. Corp. v. Columbia Cas. Co.*, 2005 U.S. Dist. LEXIS 45725 (S.D. Ind. Oct. 5, 2005)........................................................................................14

DM3\7199210.1

*Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015) ............................................6, 9, 15

**Federal Statutes**

11 U.S.C §101 ...........................................................................................................................*Passim*

28 U.S.C. § 157 ........................................................................................................................*Passim*

28 U.S.C. § 1334 ...................................................................................................................... 2, 7-8

28 U.S.C. § 1367 .............................................................................................................................7

28 U.S.C. § 1391 .............................................................................................................................3

DM3\7199210.1

Certain Underwriters at Lloyd's, London subscribing various policies, Ancon Insurance Co. (UK) Ltd., Assicurazioni Generali T.S., Dominion Insurance Co. Ltd., Excess Insurance Co. Ltd., London & Edinburgh General Insurance Co. Ltd., St. Katherine Insurance Co. Ltd., Terra Nova Insurance Co. Ltd., Turegum Insurance Co. Ltd., Unionamerica Insurance Co. Ltd., and Yasuda Fire & Marine (UK) Ltd. (collectively, "London Market Insurers" or "LMI"), defendants in the captioned adversary proceeding ("Adversary Proceeding"), hereby move the United States District Court for the Southern District of New York ("District Court"), pursuant to 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011, and Rule 5011-1 of the Local Bankruptcy Rules for the Southern District of New York ("Motion"), for entry of an Order withdrawing the reference of all of the claims in this Adversary Proceeding ("Claims", as further defined in paragraph 13 below).  In support thereof, LMI respectfully state as follows:

## INTRODUCTION

1.      The Court should withdraw the reference of the Claims for "cause" because (i) the Motion is timely filed; (ii) the Claims are not within the Bankruptcy Court's core jurisdiction; (iii) the Bankruptcy Court does not have final adjudicative authority over the Claims; (iv) judicial economy favors immediate withdrawal; (v) uniformity in bankruptcy administration will not be impacted; (vi) it is the most economical use of the Roman Catholic Diocese of Rockville Centre, New York's ("Diocese") and LMI' resources; (vii) the withdrawal request does not constitute forum shopping; (viii) withdrawal will expedite the bankruptcy process; and (ix) LMI have made a jury demand and are entitled to a jury trial on all disputed factual issues.

2.      The Motion is timely filed.  LMI filed the Motion contemporaneously with its Answer.

3.     The Claims are not within the Bankruptcy Court's core jurisdiction because they are state-law contract claims.   Moreover, the Claims are outside the Bankruptcy Court's constitutional authority to adjudicate because they raise matters of private right.

4.     Withdrawing the reference of the Claims would serve judicial economy.   The Bankruptcy Court cannot enter a final order on the Claims, thus withdrawing the reference now will avoid the duplicative use of judicial resources, because only the District Court would be required to familiarize itself with the relevant facts and law.   Withdrawal will not only conserve scarce judicial resources, it will conserve the Diocese's and LMI' resources.

5.     Uniformity in the administration of the bankruptcy proceeding will not be disrupted, because withdrawing claims only affects the uniformity of bankruptcy administration when such claims raise questions of substantive bankruptcy law.   The Claims exist under state law, not bankruptcy law.

6.     Withdrawal of the reference would not constitute forum shopping.   Courts have only found a motion to withdraw the reference to be forum shopping when the motion to withdraw followed an adverse decision in the Bankruptcy Court.   There has been no such adverse decision.

7.     Withdrawing the reference would allow the Bankruptcy Court to focus its attention on the administration of the bankruptcy case, which would expedite the bankruptcy process.

8.     Lastly, LMI are entitled to a jury trial on the Claims and have made a jury demand in their Answer.

9.     LMI respectfully request the Court to grant the Motion and withdraw the reference of this case, at this time.

## JURISDICTION AND VENUE

10.     The Court has jurisdiction over this case and this Motion pursuant to 28 U.S.C. §§ 157, 28 U.S.C. § 1334, because the Plaintiff, the Diocese, filed a chapter 11 bankruptcy case in

8

this District, Case No. 20-12345 ("Bankruptcy Case"), and the Claims are related-to the Bankruptcy Case.

11.     Venue of this case in this Court is proper pursuant to 28 U.S.C. § 1391.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

12.     On October 1, 2020, the Diocese filed the Bankruptcy Case under chapter 11 of title 11 of the United States Code, 11 U.S.C §101, *et seq*.

13.     On October 1, 2020, the Diocese filed an Adversary Complaint ("Complaint") in the Bankruptcy Court for this District.  The Claims, which are set forth in the Complaint, are as follows: (i) "a judicial determination of the rights and duties of the Diocese and the Insurers with respect to an actual controversy arising out of the Insurance Policies", *i.e.*, a declaration of the Diocese's rights under the its insurance policies; and (ii) damages for "the Insurers' breaches of their contractual obligations to defend and indemnify the Diocese for the underlying CVA actions", *i.e.*, breach of contract; and (iii) as against LMI, for failure to reimburse the Diocese for expenses for claims prior to the enactment of the CVA, and afterwards, *i.e.*, breach of contract. Complaint at 19-20.

14.     According to the Complaint, LMI subscribed their several respective shares of various occurrence-based, and claims-made, commercial general liability indemnity policies on behalf of the Diocese, with effective dates from October 1, 1976 to October 22, 1986 (collectively, "LMI Policies").

## RELIEF REQUESTED

15.     LMI respectfully request that this Court grant the Motion and withdraw the reference of the Claims in this Adversary Proceeding.

## ARGUMENT

16.     The District Court should withdraw the reference of all the Claims for "cause." "Section 157(d) does not define the term 'cause.'" *Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F. 3d 1095, 1101 (2d Cir. 1993).

17.     However, "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d).

> In exercising its broad discretion to withdraw the bankruptcy reference, the Court should consider the following factors: (1) whether the bankruptcy court has constitutional authority to enter a final decision; (2) judicial economy; (3) uniformity in bankruptcy administration; (4) economical use of debtors' and creditors resources; (5) reduction of forum shopping and confusion; (6) expediting the bankruptcy process; and (7) the presence of a jury demand.

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 486 B.R. 579, 582 (S.D.N.Y. 2013) (*citing Orion*, 4 F. 3d at 1101).

18.     Here, the District Court should withdraw the reference because, as discussed below, all the factors favor withdrawal.

## I.      The Motion Is Timely Filed

19.     This Court has previously held that when a party files its motion to withdraw concurrently with its Answer and jury demand, it is timely. *Kentile Floors v. Congoleum Corp. (In re Kentile Floors)*, 1995 U.S. Dist. LEXIS 11421, at *5 (S.D.N.Y. Aug. 9, 1995); *see also VWE Grp., Inc. v. Amlicke (In re VWE Grp., Inc.)*, 359 B.R. 441, 447 (S.D.N.Y. 2007) (motion timely because it was filed with the jury demand).

20.     LMI filed the Motion at the same time it filed its Answer.  Hence, it is timely.

II.     **There Is Cause to Withdraw the Reference**

    A.     **The Bankruptcy Court Cannot Enter a Final Order on the Claims**

        1.     **Article III of the U.S. Constitution Limits the Bankruptcy Court's Authority to Decide Matters of Private Rights**

21.     The Bankruptcy Court cannot enter a final decision on the Claims.  Article III of

the United States Constitution provides:

> The judicial power of the United States shall be vested in one Supreme Court, and
> in such inferior courts as the Congress may from time to time ordain and establish.
> The judges, both of the supreme and inferior courts, shall hold their offices during
> good behavior, and shall, at stated times, receive for their services, a compensation,
> which shall not be diminished during their continuance in office.

U.S. Const. art. III, § 1.

22.     Article III constitutes "an inseparable element of the constitutional system of

checks and balances" that must "be jealously guarded." *Northern Pipeline Constr. Co. v.

Marathon Pipe Line Co.,* 458 U.S. 50, 58 (1982) (plurality opinion).  It prevents Congress from

"withdraw[ing] from [Article III] judicial cognizance any matter which, from its nature, is the

subject of a suit at the common law, or in equity, or admiralty." *Murray's Lessee v. Hoboken Land

& Improvement Co.*, 59 U.S. 272, 284 (1856).  Article III "serves both to protect 'the role of the

independent judiciary within the constitutional scheme of tripartite government' and to safeguard

litigants' 'right to have claims decided before judges who are free from potential domination by

other branches of government.'" *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833,

848 (1986) (citations omitted).   "In sum, our Constitution unambiguously enunciates a

fundamental principle—that the 'judicial Power of the United States' must be reposed in an

independent Judiciary." *Northern Pipeline*, 458 U.S. at 60.

23.     State-created private right disputes lie at the center of Article III adjudication. *Id.*

at 70.  A private right is one involving "the liability of one individual to another under the law as

defined." *Stern v. Marshall*, 564 U.S. 462, 489 (2011).  These rights "may not be removed from

the jurisdiction of Article III courts".  *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 32

(2014).  Contract disputes, such as insurance coverage cases, are private right disputes.  *Northern*

*Pipeline*, 458 U.S. at 71; *see In re SRC Holding Corp.,* 545 F.3d 661, 666 (8th Cir. 2008).[2]

"[T]here is no doubt that the bankruptcy judges … are not Art. III judges."  *Id.* at 61.  They lack

the constitutional authority to enter final judgments on state law claims.  *Stern v. Marshall*, 564

U.S. 462, 469 (2011).  Absent knowing and voluntary consent by the parties, an Article III Court

must decide such claims.  *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1939 (2015).

LMI have not granted such consent here.

24.     "Under *Stern*, Article III … determines the bankruptcy court's adjudicative

authority.  Thus, a district court . . . must first determine whether or not the bankruptcy court has

constitutional authority to enter final judgment on the claim . . . .  To the extent the core/non-core

distinction held a privileged position among the *Orion* factors before *Stern*, this is no longer the

case."  *In re Lyondell Chem. Co.*, 467 B.R. 712, 719 (S.D.N.Y. 2012); *see also Sec. Investor*

*Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 486 B.R. 579, 582 n.1 (S.D.N.Y. Feb. 6,

2013) (*quoting Dynegy Danskammer, L.L.C. v. Peabody Coaltrade Int'l Ltd.*, 905 F. Supp. 2d 526

(S.D.N.Y. 2012)).  This is because there are some core matters over which the Bankruptcy Court

does not have final adjudicative authority.  *See, e.g., Stern*, 564 U.S. at 484, *Granfinanciera, S.A.*

*v. Nordberg*, 492 U.S. 33, 56 (1989).

---

[2]      By contrast, a non-Article III tribunal may resolve a right closely integrated into a public regulatory scheme. *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 594 (1985).  The filing of a bankruptcy case itself, in contrast to the Claims, is such a public right.  "[T]he restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages[.]"  *Northern Pipeline Const. Co.*, 458 U.S. at 71.

25.     Consistent with this principle, the Supreme Court set forth three instances where a bankruptcy court may adjudicate a claim finally: (1) if the claim involves a public right; (2) if the process of adjudicating the creditor's proof of claim would necessarily resolve a counterclaim; or (3) if the parties consent to final adjudication by the bankruptcy court.  *Stern,* 564 U.S. at 478-82, 488-99; *accord Lyondell*, 467 B.R. at 720 (applying these three considerations in deciding motion to withdraw bankruptcy reference**).**

26.     None of the foregoing three instances exists here, and therefore the Bankruptcy Court may not finally adjudicate the Claims.

27.     First, none of the Claims implicates public rights.  *See, e.g., Stern*; *Beacon Theatres v. Westover*, 359 U.S. 500, 506 (1959).  All of the Claims are at common law or in equity.  The Claims involve disputes between private persons over contract interpretation.

28.     Second, LMI are not creditors of the Diocese, hence, there is no proof of claim to be adjudicated, nor any counterclaim.

29.     Third, LMI have not consented to final adjudication by the Bankruptcy Court.

30.     The Bankruptcy Court cannot make final determinations on the Claims.  It can only enter proposed findings (on undisputed facts) and legal conclusions, all of which must come to the Court for review and entry of a final order.  *See* 28 U.S.C. § 157(c).

### 2.     The Bankruptcy Court's Jurisdiction over the Claims Is Non-Core

31.     All of the Claims are outside the Bankruptcy Court's core jurisdiction.

To satisfy constitutional limitations on the subject matter jurisdiction of the Article I bankruptcy courts, bankruptcy jurisdiction is divided into "core" and "non-core" jurisdiction.  *See* 28 U.S.C. § 157.

*In re Fairfield Sentry Ltd. Litig*., 458 B.R. 665, 674 (S.D.N.Y. 2011).

32.     The Bankruptcy Court's jurisdiction is governed by 28 U.S.C. §§ 1334 and 157(a).

*Kirschenbaum v. United States DOL (In re Robert Plan Corp.)*, 777 F.3d 594, 596 (2d Cir. 2015).

The District Court has "original and exclusive jurisdiction of all cases under title 11,"  28 U.S.C. § 1334(a), and has "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).  Pursuant to 28 U.S.C. § 157(a), the Court may refer to the Bankruptcy Court "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157(a).

33.     A proceeding "aris[es] under" title 11, and therefore invokes the bankruptcy court's core jurisdiction**,** if it "invoke[s] substantive rights created by bankruptcy law." *In re Housecraft Indus. USA, Inc*., 310 F.3d 64, 70 (2d Cir. 2002).  Insurance coverage claims do not arise under Title 11. *Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 407 (S.D.N.Y. 1991).  The Claims do not invoke any substantive rights under bankruptcy law; they involve state law only.  Hence, the Claims do not "arise under."

34.     A proceeding "arising in" title 11 "covers claims that are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy." *Baker v. Simpson*, 613 F.3d 346, 350-51 (2d Cir. 2010) (internal quotation marks and citations omitted).  Insurance coverage claims do not arise only in a case under Title 11. *Drexel Burnham*, 130 B.R. at 407.  The Claims have their own separate existence outside of bankruptcy in state court, where insurance coverage claims are litigated every day.  Hence, the Claims do not "arise in."

35.     In core proceedings, the Bankruptcy Court has the power to enter final orders. *See* 28 U.S.C. § 157(b)(1) ("Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection

(a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title").

36.    A bankruptcy court has "non-core" jurisdiction over proceedings that are "related to" the bankruptcy case.  28 U.S.C. § 157(c)(1); *see also In re EMS Fin. Servs., LLC*, 491 B.R. 196, 201 (E.D.N.Y. 2013) ("[N]on-core proceedings are those that are related to the bankruptcy case but do not arise under Title 11. . ..").  The there is a conjunctive test to determine whether a non-core proceeding is related-to a bankruptcy case.

> [T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.  Thus, the proceeding need not necessarily be against the debtor or against the debtor's property.  An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) *and* which in any way impacts upon the handling and administration of the bankrupt estate.

*In re Refco, Inc. Sec. Litig*., 628 F. Supp. 2d 432, 437–38 (S.D.N.Y. 2008) (citing *In re Pacor, Inc.*, 743 F.2d 984, 994 (3d Cir.1984)) (emphasis added).  In non-core proceedings, the Bankruptcy Court may only "submit proposed findings of fact and conclusions of law to the district court" for final determination following a *de novo* review.  28 U.S.C. § 157(c)(1); *see also Wellness Int'l*, 135 S.Ct.at 1940. ("Absent consent, bankruptcy courts in non-core proceedings may only 'submit proposed findings of fact and conclusions of law,' which the district courts review *de novo*").

37.    All of the Claims are outside the Bankruptcy Court's core jurisdiction.  They neither arise under Title 11, nor arise in a Title 11 case.  To the contrary, all the Claims are state law insurance coverage claims.  *See In re Lehman Bros. Holdings Inc.*, 502 B.R. 376, 382-383 (Bankr. S.D.N.Y. 2013) (holding that a breach of contract claim arising under New York law was considered a non-core matter); *see also Orion.*

15

38.     The Claims allege breach of contract and seek damages and declaratory relief regarding the parties' rights under the LMI Policies and are within the Bankruptcy Court's non-core, related-to jurisdiction only.  The Bankruptcy Court cannot enter a final order on the Claims.

**B.      Withdrawing the Reference Immediately Would Serve Judicial Economy**

39.     Withdrawal of the reference, immediately, would economize on scarce judicial resources.  *See, e.g., Hau Yin To v. HSBC Holdings PLC*, 2017 U.S. Dist. LEXIS 28931, *11 n.4 (S.D.N.Y. Mar. 1, 2017) (withdrawing reference of non-core proceeding in interest of judicial economy).  Allowing the Claims to remain in the Bankruptcy Court would be inefficient given that it cannot enter a final order on any of the Claims.

> Under *Orion*, district courts should consider the most efficient use of judicial resources.  The determination as to whether the bankruptcy court could issue a final determination is "pivotal," *Orion*, 4 F.3d at 1102, because if a district court must review recommendations *de novo*, "it would be inefficient to allow the [] proceedings to go forward, knowing that they will have to be substantially repeated", *Dev. Specialists, Inc.*, 462 B.R. at 472.

*Dynegy*, 905 F. Supp. 2d at 533; *Orion*, 4 F.3d at 1101 ("the fact that a bankruptcy court's determination on non-core matters is subject to *de novo* review by the district court could lead the latter to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court.").  As this Court has acknowledged, "finding that the claim is non-core coupled with defendants' jury demand is sufficient cause to withdraw the reference." *In re The VWE Grp., Inc.*, 359 B.R. 441, 451 (S.D.N.Y. 2007).

40.     The Claims are all non-core and LMI have asserted a jury demand.  Adequate cause exists to withdraw the reference.

**1.      Denying the Motion Would Increase the Expenditure of Judicial Resources**

41.     To deny the Motion would increase the expenditure of judicial resources.

> As a non-core proceeding, the bankruptcy court's power will be limited to making recommendations to the District Court, which can undertake a *de novo* review of that court's findings of fact and conclusions of law before entering a final order. ***Such duplicate reviews of the contracts and facts are costly and time-consuming, and unnecessarily expend judicial resources***.

*DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587, 593 (S.D.N.Y. 2012) (emphasis added).

42.     If the reference is not withdrawn, the Bankruptcy Court will spend months, possibly years, handling the litigation of the Claims, *i.e.*, overseeing discovery, ruling on motions, reviewing evidence for findings of fact and conclusions of law, which will all be reviewed *de novo* by the District Court.  Litigants dissatisfied with the Bankruptcy Court's findings and conclusions would appeal, requiring a second round of litigating disputed issues.  After that procedure, the jury trial will be conducted in this Court.  Consequently, denial of the Motion would cause both the Bankruptcy Court and the Court to expend their resources to become familiar with the relevant facts and law.  Withdrawal, at this time, would be more efficient and less costly for the Courts and the parties.

## 2.     Granting the Motion Would Save Judicial Resources

43.     Efficiency favors withdrawal of the reference for non-core claims.  *See Geron v. Levine (In re Levine)*, 2012 U.S. Dist. LEXIS 12292 (S.D.N.Y. Feb. 1, 2012) (stating that because of "the *Stern* prohibition on final adjudication by bankruptcy courts of issues involving only private rights — here, judicial economy weighs in favor of withdrawal of the reference at this time."); *Dev. Specialists,* 462 B.R. at 467 ("[W]here the Bankruptcy Court lacks final adjudicative authority, the remaining *Orion* considerations will often tend to point toward withdrawal.").  "This extra layer of review can be avoided if the matter is withdrawn to the district court."  *Baxter*, 2016 U.S. Dist. LEXIS 23051 at *7.  Thus, "unnecessary costs could be avoided by a single proceeding

in the district court." *Baxter v. Sherb & Co., LLP (In re Money Ctrs. of Am., Inc.)*, 2016 U.S. Dist. LEXIS 23051, *7 (S.D.N.Y. Feb. 16, 2016) (citing *Orion*, 4.F.3d at 1101).

> The question is whether leaving the case with [the Bankruptcy Court] indefinitely would promote judicial economy. The Court believes otherwise. Although [the Bankruptcy Court] is deeply familiar with the facts of Coudert's bankruptcy proceedings, this adversary case is *sui generis*. It appears likely that it will turn, significantly if not entirely, on the interpretation of [a] single contract

*Dev. Specialists, Inc. v. Peabody Energy Corp. (In re Coudert Bros. LLP)*, 2011 U.S. Dist. LEXIS 135990, *18 (S.D.N.Y. Nov. 22, 2011).

44.     Allowing the District Court to adjudicate the Adversary Proceeding, and oversee *all pre-trial matters related thereto*, would promote judicial economy and expediency. *Id. Dev. Specialists*, 2011 U.S. Dist. LEXIS 135990, *18. "Due to the fact that a District Court Judge must eventually preside over the jury trial in this matter, it would constitute a tremendous waste of judicial resources to permit the bankruptcy judge to continue to maintain jurisdiction over the issues presented in this litigation." *Gumport v. Growth Fin. Corp. (In re Transcon Lines)*, 121 B.R. 837, 838 (C.D. Cal. 1990). Thus, "efficiency [will be] enhanced" by an immediate withdrawal of the reference because non-core issues predominate. *Official Comm. of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.)*, 295 B.R. 211, 217 (D.N.J. 2003) (quoting *In re General Teamsters, Warehousemen and Helpers Union Local 890*, 124 F.3d 999, 1008 (9th Cir. 1997)); *see also Innovasystems, Inc. v. Proveris Scientific Corp.*, Civil Action No. 13-05077, 2013 WL 5539288, *3 (D.N.J. Oct. 7, 2013) (noting that judicial resources would be most efficiently allocated by withdrawal, given the availability of magistrate judges to assist with district court proceedings).

**C. Withdrawal of the Reference Would Not Affect the Uniformity of Bankruptcy Administration**

45.     Withdrawal of the reference would not affect the uniformity of bankruptcy administration, because the Claims are based on state law, not substantive bankruptcy law.

46.     This Court and other district courts in this Circuit have determined that withdrawal of the reference of claims based on non-bankruptcy law does not affect the uniformity of bankruptcy administration.  *See, e.g., Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 473 (S.D.N.Y. 2011) ("Their resolution will at most have the effect of augmenting the bankruptcy estate; it will have no impact that would require uniform, coordinated adjudication before the Bankruptcy Court.  Nor does the Bankruptcy Court have any special expertise in resolving the New York law claims at issue here."); *LightSquared Inc. v. Deere & Co.*, 2014 U.S. Dist. LEXIS 14752 (S.D.N.Y. Jan. 31, 2014) ("it is unlikely that withdrawal will negatively impact the uniformity of bankruptcy administration); *M Fabrikant & Sons, Inc. v. Long's Jewelers Ltd.*, 2008 U.S. Dist. LEXIS 50247, *11 (S.D.N.Y. June 26, 2008) ("Withdrawing the reference would not hamper uniform administration of the bankruptcy code because this case is a 'non-core' proceeding."); *see also Dynegy Danskammer, L.L.C. v. Peabody COALTRADE Int'l Ltd.*, 905 F. Supp. 2d 526, 533-534 (S.D.N.Y. Nov. 7, 2012) (finding that because the claims were based on state law there was no indication that any bankruptcy-specific legal analysis would be required.); *Baxter v. Sherb & Co., LLP (In re Money Ctrs. of Am., Inc.)*, 2016 U.S. Dist. LEXIS 23051 (S.D.N.Y. Feb. 16, 2016) (withdrawal granted where uniformity of bankruptcy administration was not relevant); *Residential Funding Co., LLC v. UBS Real Estate Secs., Inc*., 2015 U.S. Dist. LEXIS 29952 (S.D.N.Y. Mar. 6, 2015) ("To determine if maintaining the reference promotes the uniformity of bankruptcy administration, this Court must consider the nature of [the] claim.  *See, e.g., Dynegy*, 905 F. Supp. 2d at 533.  Here, the contract claims are based in New York

19

state law and do not concern substantive bankruptcy law.  Therefore, this factor generally would weigh in favor of withdrawing the reference.").

47.     All the Claims arise under New York state law and could arise outside of a bankruptcy case.  The determination of the Claims does not require familiarity with bankruptcy law.  The Bankruptcy Court does not have any special expertise with respect to the Claims. Furthermore, although bankruptcy courts may have experience resolving state law claims, such experience is not bankruptcy specific.

48.     Therefore, withdrawal of the reference of the Claims would not affect the uniformity of bankruptcy administration.

### D.     Economical Use of the Diocese's and Insurers' Resources

49.     Keeping the Adversary Proceeding in the Bankruptcy Court would compel the parties to duplicate their efforts.

50.     It is no surprise that "the fact that a bankruptcy court's determination on non-core matters is subject to *de novo* review by the district court could lead the latter to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court."  *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993); *Dev. Specialists, Inc.*, 462 B.R. at 472 ("[A]ny recommendations it makes will need to be reviewed *de novo* in this Court. It would be inefficient to allow these proceedings to go forward, knowing that they will have to be substantially repeated."); *see*, *e.g.*, *Silverman v. Tudor Ins. Co. (In re Lenders Abstract & Settlement Serv.)*, 493 B.R. 385 (E.D.N.Y. 2013); *DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587 (S.D.N.Y. 2012); *In re Skyline Concrete Floor Corp.*, 410 B.R. 564, 568 (E.D. Mich. 2008); *Wellman Thermal Sys. Corp. v. Columbia Cas. Co.*, 2005 U.S. Dist. LEXIS 45725 (S.D. Ind. Oct. 5, 2005); *Michaelesco v. Shefts*, 303 B.R. 249, 253 (D. Conn. 2004); *Allied Prods. Corp. v. Hartford Accident & Indemnity Co. (In re Allied Prods. Corp.)*, 2003 U.S. Dist. LEXIS 2596 (N.D.

Ill. Feb. 20, 2003); *Travelers Indem. Co. v. Babcock & Wilcox Co.*, 2002 U.S. Dist. LEXIS 2477

(E.D. La. Jan. 23, 2002); *Lawrence Group v. Hartford Cas. Ins. Co. (In re Lawrence Group, Inc.)*,

285 B.R. 784 (N.D.N.Y. 2002); *see also In re Ozier*, 132 B.R. 595, 603 (Bankr. E.D. Ark. 1991)

("The interests of judicial economy will best be served by referring the matter to the Article III

district court.").

51.     Withdrawing the reference for the Adversary Proceeding would be the most

economical use of the parties' resources.  The parties would not have to duplicate their efforts.  If

the matter is not withdrawn, the parties must attend hearings in both the Bankruptcy Court and this

Court, on the same issues and costs would be increased accordingly.

### E.     Withdrawal of the Reference Would Not Constitute Forum Shopping

Withdrawal of the reference would not constitute forum shopping.  Courts have only found

a motion to withdraw the reference to be forum shopping when the motion to withdraw followed

an adverse decision in the Bankruptcy Court.  *See In re New York Trap Rock Corp.*, 158 B.R. 574,

577 (S.D.N.Y. 1993) ("Forum shopping efforts pursued by awaiting a decision relevant to the

merits and then bypassing or filing a motion to transfer should not be rewarded with success.").

The Bankruptcy Court has issued no adverse decision.  Irrefutably, the Motion is not being filed

in order to forum shop.

### F.     Withdrawing the Reference Will Expedite the Bankruptcy Process

52.     An immediate withdrawal of the reference would allow the Bankruptcy Court to

concentrate its resources on completing its administration of the Diocese's estate successfully,

while the District Court focuses on the Adversary Proceeding.  *Calascibetta v. Penson Fin. Servs.*

*(In re U.S. Mortg. Corp.)*, 2012 U.S. Dist. LEXIS 55191, at *12 (D.N.J. Apr. 19, 2012) (citing

*Shalom Torah Ctrs. v. Phila. Indem. Ins. Cos.*, Civil Action No. 10-6766 (FLW), 2011 U.S. Dist.

21

LEXIS 35726, at *8 (D.N.J. Mar. 31, 2011); *see also Pelullo*, 1997 U.S.Dist. LEXIS 12372, at *8-9 (stating that going forward in the District Court would expedite the bankruptcy process).

53.     Withdrawal can expedite the bankruptcy process significantly:

[…] withdrawal of the reference as to all of the…claims expedites the bankruptcy process because it eliminates the prospect of: (1) contemporaneous proceedings in this Court and the District Court; (2) an appeal from this Court's adjudication of the core claims; and (3) the District Court having to conduct a de novo review of proposed findings and conclusions of the undersigned bankruptcy judge after a trial in the bankruptcy court as to the one non-core claim. Thus, withdrawal of the reference will expedite the bankruptcy process because the District Court will hold one trial and issue one judgment and therefore allow the Trustee to administer the estate more quickly than if proceedings were held in both this Court and the District Court. Therefore, the Trustee will spend fewer estate funds litigating this suit to its conclusion, and use of fewer estate funds is certainly more efficient to the bankruptcy process.

*In re Align Strategic Partners LLC*, No. 16-35702, 2019 WL 2527221, at *4–5 (Bankr. S.D. Tex. Mar. 5, 2019).

54.     By withdrawing the reference, the Bankruptcy Court can focus on the administration of the bankruptcy case, thereby expediting the bankruptcy process.

**G.     The Presence of a Jury Demand**

55.     LMI have made a jury demand in their Answer filed along with this Motion.  LMI are entitled to have a jury trial as a constitutional right pursuant to the Seventh Amendment.

56.     Under the Seventh Amendment, the right to a jury trial is guaranteed on all legal claims:

The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." […] "Suits at common law" refers to "suits in which legal rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered." *Parsons v. Bedford*, 3 Pet. 433, 447, 7 L.Ed. 732 (1830); *see also ibid.* ("[T]he amendment then may well be construed to embrace all suits which are not of equity and admiralty jurisdiction, whatever may be the peculiar form which they may assume to settle legal rights"). The right extends to causes of action created by Congress. *Tull v. United States*, 481 U.S. 412, 417 (1987). Since the merger of the systems of

22

> law and equity, see Fed.Rule Civ.Proc. 2, this Court has carefully preserved the
> right to trial by jury where legal rights are at stake. As the Court noted in *Beacon
> Theatres, Inc. v. Westover*, 359 U.S. 500, 501 (1959), "'Maintenance of the jury as
> a fact-finding body is of such importance and occupies so firm a place in our history
> and jurisprudence that any seeming curtailment of the right to a jury trial should be
> scrutinized with the utmost care' " (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486
> (1935)).

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564–65 (1990).

57.    LMI have a right to a jury trial in the Adversary Proceeding.  It is well settled that

"the right to a jury trial in the federal courts is to be determined as a matter of federal law…."

*Simler v. Conner*, 372 U.S. 221, 222 (1963) (*per curiam*).  This is true regardless of whether the

claim arises under state law, *GTFM, LLC v. TKN Sales, Inc.*, 257 F.3d 235, 240 (2d Cir. 2001).

58.    Because the Claims are legal rather than equitable, LMI are entitled to a trial by

jury on all disputed factual issues.

       **1.    The Claims Involve Legal Claims That Must Be Resolved Prior to the Equitable Claims**

          a.    <u>The Breach of Contract Claims</u>

59.    The breach of contract Claims must be tried to a jury.

60.    A claim for breach of contract is a legal claim traditionally tried to a jury.  *See

Corinthian Media, Inc. v. Putnam*, 845 F. Supp. 143, 145 (S.D.N.Y. 1994).  Further, this Court has

previously stated, "It is true, as defendants contend, that actions seeking damages for breach of

contract are traditionally considered to be legal in nature.  *Citigroup Inc. v. VDN Sys., Inc.*, 2008

WL 5274091, at *2 (S.D.N.Y. Dec. 16, 2008); *See also Brown v. Sandimo Materials,* 250 F.3d

120, 126 (2d Cir. 2001) ("Plaintiffs' claim under section 301 of the LMRA is, at base, a claim for

breach of contract, which has historically been uniformly treated as a legal claim.").

61.    Here, the Diocese is seeking an award of compensatory and consequential damages under the breach of contract Claims, which are legal claims and must be heard by a jury upon LMI' demand.

b.    The Declaratory Relief Claim

62.    LMI are also entitled to a jury trial on the Claim for declaratory relief.

63.    The right to a jury trial in a declaratory relief action is preserved in federal court. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504-508 (1959). Declaratory actions are not, in themselves, legal or equitable. *Am. Safety Equip. Corp. v. J. P. Maguire & Co.*, 391 F.2d 821, 824 (2d Cir. 1968). It is blackletter law that parties to a declaratory relief claim for insurance coverage are entitled to a jury trial In a similar situation, the Third Circuit held,

> […] the issue posed to us is whether a declaratory judgment claim based on a contract, which would otherwise clearly be a legal claim entitling the plaintiff to a jury, becomes an equitable claim when filed in anticipation of harm but before harm has been suffered. Our answer is "no" unless special circumstances exist which indicate that a suit on the contract is likely to be inadequate when it is available. Since no such circumstances have been shown to exist, we conclude that [Plaintiff] is entitled to a jury trial on its declaratory judgment claims.

*AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 226 (3d Cir. 2009); *see Stonewall Ins. Co. v. Nat'l Gypsum Co.,* No. 86 CIV. 9671 (JSM), 1992 WL 281401, at *1 (S.D.N.Y. Sept. 25, 1992) ("Specifically, National Gypsum seeks a declaratory judgment that defendant insurers are obligated to pay certain sums and indemnify National Gypsum for sums within the policy limits. As the claim 'at bottom concerns the duty of a contract-obligor to pay money on the fulfillment of a condition,' it is legal in nature... Such claims have routinely been held to present legal issues triable by a jury.")

64.    Therefore, LMI are entitled to a jury trial on the single declaratory judgment Claim. Specifically, "[t]he Diocese seeks a judicial determination of the rights and duties of the Diocese and the Insurers with respect to an actual controversy arising out of the Insurance Policies."

Complaint, ¶ 83.  That is, the Diocese is seeking a determination that LMI are required to pay certain amounts under the LMI Policies, as shown by the following allegations.  The Diocese's second claim alleges that LMI, "[…] have failed and refused to defend the Diocese in claims and lawsuits alleging sexual and/or physical abuse, and/or have disclaimed any obligation to indemnify the Diocese for any judgments or settlements."  Complaint, ¶ 91.  Lastly, in the third count the Diocese alleges that, "LMI has failed and refused to fulfill its contractual obligations to reimburse the Diocese under the Aggregate Excess agreement."  Complaint, ¶ 96.

65.     Lastly, LMI have made a timely jury demand in their Answer.  The Court may dispense with a jury trial only if all parties consent.  Fed. R. Civ. P. 38(d).  LMI do not waive or consent to the withdrawal of their right to a jury trial.

66.     Therefore, LMI are entitled to a jury trial on all disputed factual issues.

### 2.     The Claims Involve Factual Disputes

67.     The Claims involve disputes over material facts that must be determined by a trier of fact.

68.     The Diocese and LMI disagree over when and if insurance payments become due and whether LMI have breached any obligation to indemnify the Diocese.  The question of breach is factual, not legal.  Therefore, the LMI are entitled to a jury trial and because the Bankruptcy Court cannot conduct the trial, the Motion should be granted.

### H.     The Factors All Favor Withdrawing the Reference

69.     All of the *Orion* factors favor withdrawal.  (i) the Motion is timely filed; (ii) the Claims are not within the Bankruptcy Court's core jurisdiction; (iii) the Bankruptcy Court does not have final adjudicative authority over the Claims; (iv) judicial economy favors immediate withdrawal; (v) uniformity in bankruptcy administration will not be impacted; (vi) it is the most economical use of the Diocese and LMI's resources; (vii) the withdrawal request does not

25

constitute forum shopping; (viii) withdrawal will expedite the bankruptcy process; and (ix) LMI

have made a jury demand and are entitled to a jury trial on all disputed factual issues.

70.     Therefore, LMI are entitled to have the reference of the Claims withdrawn,

immediately.

## III.     CONCLUSION

**WHEREFORE,** based on the foregoing, LMI respectfully request that the District Court

(i) grant the Motion; (ii) immediately withdraw the reference of the Adversary Proceeding; and

(iii) grant such other and further relief as is just.

Dated: December 28, 2020
Chicago, Illinois

Duane Morris LLP

By:*/s/Catalina J. Sugayan*_____
        Catalina J. Sugayan *(Pro Hac Vice)*
        Robert A. Meyers *(Pro Hac Vice)*
        James J. Moffitt *(Pro Hac Vice)*
        Clyde & Co US LLP
        55 West Monroe Street, Suite 3000
        Chicago, IL 60603
        Main: +1 312.635.7000
        Fax: +1 312.635.6950
        Email: catalina.sugayan@clydeco.us
        Email: Bob.Meyers@clydeco.us
        Email: James.Moffitt@clydeco.us

        Russell W. Roten *(Pro Hac Vice)*
        Jeff D. Kahane (*(Pro Hac Vice)*
        Andrew E. Mina *(Pro Hac Vice)*
        865 South Figueroa Street, Suite 3100
        Los Angeles, California 90017-5450
        Telephone: +1 213.689.7400
        Fax: +1 213.689.7401
        Email: rwroten@duanemorris.com
        Email: jkahane@duanemorris.com
        Email: amina@duanemorris.com

        *Counsel for London Market Insurers*