```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE                          :
CENTRE, NEW YORK,                                                :
                                                                 :
                              Plaintiff,                         :   21 Civ. 71 (JPC)
                                                                 :
                -v-                                              :   OPINION
                                                                 :   AND ORDER
CERTAIN UNDERWRITERS AT LLOYDS, LONDON                           :
& CERTAIN LONDON MARKET COMPANIES,                               :
                                                                 :
                              Defendant.                         :
                                                                 :
-----------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

Following New York's enactment of the Child Victims Act ("CVA"), hundreds of civil suits alleging child sexual abuse were filed against the Roman Catholic Diocese of Rockville Centre, New York (the "Diocese"). The Diocese subsequently filed for Chapter 11 protection in the United States Bankruptcy Court for the Southern District of New York. It alleges that an essential asset of the estate is insurance coverage provided by several insurance policies. The insurance companies dispute the scope of these policies. The Diocese thus filed in the bankruptcy court an adversary complaint against the insurance companies seeking a declaratory judgment and damages for breach of contract, stemming from the insurers' refusal to defend and indemnify the Diocese.

Several defendants in that adversary proceeding, referred to as the London Market Insurers ("LMI"), have moved for withdrawal of the reference to the bankruptcy court pursuant to 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011, and Rule 5011-1 of the Local Bankruptcy Rules for the Southern District of New York. The Diocese opposes withdrawal. For the reasons stated below, the Court grants LMI's motion to withdraw the reference.

# I. Background

## A. Factual Background

The following facts, none of which seem to be in dispute, are taken from the parties' filings and are assumed true for purposes of deciding the motions pending before the Court. *See Roman Cath. Diocese of Rockville Ctr., N.Y. v. Arrowood Indem. Co.*, No. 20 Civ. 11011 (VEC), 2021 WL 1978560, at *1 n.1 (S.D.N.Y. May 17, 2021).[1]

On February 14, 2019, former New York Governor Andrew Cuomo signed into law the CVA. Dkt. 21 ("Chapin Decl.") ¶ 3. The CVA allows individuals who were sexually abused as children to assert civil claims that had previously been barred by the statute of limitations. *See id.* Specifically, the CVA extends the statute of limitations for actions against "any party whose intentional or negligent acts or omissions are alleged to have resulted in the commission of child sexual offenses." *Id.* ¶ 4. Those actions must be brought before the plaintiff reaches the age of 55. *Id.* The CVA also created a "window" of time, *id* ¶ 3 (internal quotation marks omitted), during which previously time-barred claims alleging child sexual abuse could be brought, *id.* ¶ 4.

The Diocese is the seat of the Roman Catholic Church on Long Island and was established in 1957 from territory formerly part of the Diocese of Brooklyn. Dkt. 22 ("Moore Decl.") ¶ 4. In anticipation of the enactment of the CVA, the Diocese identified various insurance policies that it says it held from the late 1950s to the present. Chapin Decl. ¶ 6; Moore Decl. ¶ 16. The Diocese alleges that prior to September 1, 1976, Royal Insurance Company (now known as Arrowood)

---

[1] In *Roman Catholic Diocese of Rockville Centre, New York v. Arrowood Indemnity Co.*, Arrowood Indemnity Company, another defendant in the same adversary proceeding as the one at issue here, also moved to withdraw the reference to the bankruptcy court. 2021 WL 1978560, at *1. The Honorable Valerie E. Caproni granted that motion with regard to the claims against Arrowood. *See id.* at *11. That case is not labeled as related to this one, and, aside from the persuasive value of its legal analysis, Judge Caproni's decision has no bearing here because "[t]he Arrowood and LMI insurance policies differ in several key ways." *See id.* at *2 n.6.

provided the Diocese general liability coverage.  Chapin Decl. ¶ 7; *see also Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at *1.  From September 1, 1976 to September 1, 1986, the Diocese contends that it purchased insurance coverage from a syndicate of insurance companies known as LMI.[2]  Chapin Decl. ¶ 7.  After September 1, 1986, the Diocese says a company called Ecclesia provided it coverage.  *Id.*  The Diocese alleges that these policies require the relevant insurers to defend and indemnify the Diocese against child sexual abuse claims.  *See* Dkt. 20-2 ¶¶ 19-23 ("Adversary Complaint"); *see also* Chapin Decl. ¶¶ 10-13.  The Diocese believes these policies are very valuable to the estate because it alleges that many of them did not have aggregate policy limits.  Chapin Decl. ¶ 8.

After the CVA became law, more than 200 previously time-barred actions alleging child sexual abuse were brought against the Diocese and certain individuals and organizations affiliated with the Diocese.  *Id.* ¶ 5.  Together, these suits allege acts of sexual abuse dating back more than six decades.  *Id.* ¶ 10; Moore Decl. ¶ 15.  The Diocese provided notice to its former insurers and requested that they defend and indemnify the Diocese in accordance with the requirements in the individual policies.  Chapin Decl. ¶¶ 10-12.

In many respects, the insurance companies disagreed with the Diocese's reading of the policies and disputed the meaning of various provisions.  *See id.* ¶ 13.  LMI in particular disputed several key aspects of the scope of the policies that allegedly covered the Diocese from 1976 to 1986.  *See id.* ¶¶ 15-16.  For example, LMI claimed to not have an "obligation to reimburse defense expense or a loss payment until after the underlying claim is resolved and coverage for that claim

---

[2] LMI is a collective reference to Certain Underwriters at Lloyd's, London subscribing various policies, Ancon Insurance Co. (UK) Ltd., Assicurazioni Generali T.S., Dominion Insurance Co. Ltd., Excess Insurance Co. Ltd., London & Edinburgh General Insurance Co. Ltd., St. Katherine Insurance Co. Ltd., Terra Nova Insurance Co. Ltd., Turegum Insurance Co. Ltd., Unionamerica Insurance Co. Ltd., and Yasuda Fire & Marine (UK) Ltd.  *See* Dkt. 1 at 7.

has been determined." *Id.* ¶ 16 (internal quotation marks omitted).

The filing of more than 200 claims, and the possibility of additional claims, led the Diocese on October 1, 2020 to file for bankruptcy protection pursuant to Chapter 11 of the United States Bankruptcy Code. Moore Decl. ¶ 15; Dkt. 1 ("Motion") ¶ 12. That same day, the Diocese filed in the bankruptcy court an adversary complaint against Arrowood, LMI, and other insurers in which the Diocese seeks a declaratory judgment regarding the scopes of the various insurance policies and alleges damages for breach of contract stemming from the insurance companies' refusal to defend and indemnity the Diocese. *See* Adversary Complaint ¶¶ 82-97; Motion ¶ 13. The purpose of that adversary proceeding is essentially to determine the insurance companies' obligations under the various polices at issue. The value of the policies ultimately will affect the value of the Diocese's estate and thus the sum of money that will be available to the alleged victims.

**B. Procedural History**

On January 5, 2021, LMI filed a motion to withdraw the bankruptcy reference pursuant to 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011, and Rule 5011-1 of the Local Bankruptcy Rules. *See* Motion at 7. While this motion appears to seek withdrawal of the entire adversary action, the Court only considers whether the reference should be withdrawn with regard to the Diocese's claims against LMI. *See Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at *2 n.6 (addressing another insurer's motion to withdraw the reference with regard to the same adversary proceeding and noting that 28 U.S.C. § 157(d) provides that district courts may withdraw proceedings "in whole or in part"). On January 15, 2021, Fireman's Fund Insurance Company, Interstate Fire & Casualty Company, and National Surety Corporation joined LMI's motion. Dkt. 14. On January 27, 2021, the Diocese filed a memorandum of law in opposition to LMI's motion, Dkt. 19 ("Opposition"), and several declarations and accompanying exhibits in

support of its Opposition, *see* Dkt. 20; Chapin Decl.; Moore Decl.[3] That same day, the Official Committee of Unsecured Creditors (the "Unsecured Creditors") of the Diocese joined the Diocese's Opposition and filed a brief raising several other arguments. Dkt. 26 ("Unsecured Creditors' Joinder"). On February 11, 2021, LMI filed a reply brief in support of its motion to withdraw, Dkt. 32 ("Reply"), and a brief in reply to the Unsecured Creditors' joinder, Dkt. 33 ("Reply to Unsecured Creditors").

On January 7, 2021, after Judge Caproni declined to accept this case as related to *Roman Catholic Diocese of Rockville Centre, New York v. Arrowood Indemnity Co.*, No. 20 Civ. 11011 (VEC) (S.D.N.Y.), this case was assigned to the Honorable Edgardo Ramos. On March 4, 2021, this case was reassigned to the undersigned.

## II.  Legal Standard

District courts have original jurisdiction over civil proceedings "arising under," "arising in," or "related to" cases under the United States Bankruptcy Code, also known as "title 11." 28 U.S.C. § 1334(b). But "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). In this District, "all Chapter 11 cases

---

[3] The Diocese submitted "the same brief" and supporting declarations in this action and the action before Judge Caproni in which Arrowood moved to withdraw the bankruptcy reference. Opposition at 1 n.2; *see also Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at *6 n.13. This makes the Opposition at times difficult to follow because it includes responses to Arrowood's arguments, which are not before the Court. *See, e.g.*, Opposition at 9-10. The Opposition also lacks specificity with regard to the LMI policies in many key respects. *See, e.g., id.* at 9 (arguing that the Diocese's insurance policies generally constitute "an essential asset of the estate" but failing to indicate details of the LMI policies (emphasis omitted)). The Court frowns on this practice, particularly because the Diocese submitted its Opposition after its repeated requests for this action to be designated as related to the action before Judge Caproni were denied. *See* Opposition at 1 n.2; *see also Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at *2 n.6.

are automatically referred to bankruptcy judges via a standing order." *In re Lyondell Chem. Co.*, 467 B.R. 712, 718 (S.D.N.Y. 2012); *see In re Standing Order of Reference Re: Title 11*, 12 Misc. 32 (LAP) (S.D.N.Y. Feb. 1, 2012).

By statute, bankruptcy-related matters are divided into "core" and "non-core" proceedings. 28 U.S.C. § 157(b)-(c). The statute does not define what it means for a proceeding to be "core," but gives some examples, like "counterclaims by the estate against persons filing claims against the estate," *id.* § 157(b)(2)(C), and "determinations of the validity, extent, or priority of liens," *id.* § 157(b)(2)(K). While "[b]ankruptcy courts can hear both core proceedings and non-core proceedings that are otherwise related to a case under title 11," they may enter "final judgments only in core proceedings," unless the parties otherwise consent. *In re Lyondell Chem. Co.*, 467 B.R. at 718 (internal quotation marks omitted). "In non-core cases otherwise related to a case under title 11, bankruptcy courts are authorized to 'submit proposed findings of fact and conclusions of law to the district court.'" *Id.* (quoting 28 U.S.C. § 157(c)(1)). As an Article III court, the district court can then "enter final judgments . . . only after reviewing *de novo* any matters to which a party timely and specifically objects." *Id.*

When a matter is referred to the bankruptcy court, "[t]he district court may withdraw, in whole or in part, any case or proceeding . . . on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). The statute does not define "cause" either, but the Second Circuit in *In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir. 1993), "directed district courts to consider several factors in evaluating a motion to withdraw a bankruptcy reference." *Lehman Brothers Holdings Inc. v. Standard Pac. Mortg., Inc.*, No. 19 Civ. 4080 (WHP), 2019 WL 7593628, at *1 (S.D.N.Y. Aug. 23, 2019) (citing *Orion*, 4 F.3d at 1101).

The first factor that the Second Circuit identified in *Orion* is "whether the claim[s] [are]

6

core or non-core." 4 F.3d at 1101.  In *Stern v. Marshall*, 564 U.S. 462 (2011), the Supreme Court held that, while section 157(b)(2)(C) granted the bankruptcy court statutory authority to enter a final judgment as to a particular counterclaim under state law, the bankruptcy court lacked constitutional authority to enter that judgment because the counterclaim did not fall under the "public right" exception to Article III.  *Stern*, 564 U.S. at 487-99; *see also id.* at 500-03 (also rejecting arguments that the bankruptcy court's judgment was constitutional because bankruptcy courts act as "adjuncts" of the district court and out of concerns with delays and inefficiency by restricting bankruptcy courts' authority).  As a result of this holding, "it is not the core/non-core distinction but Article III that determines the bankruptcy court's adjudicative authority" because some core claims cannot be finally adjudicated by the bankruptcy court.  *In re Lyondell Chem. Co.*, 467 B.R. at 719.   Thus, post-*Stern*, "courts in this District have concluded that 'the relevant inquiry under the first prong of the *Orion* test is . . . whether the bankruptcy court has the authority to finally adjudicate the matter.'"  *Lehman Brothers Holdings, Inc. v. Hometrust Mortg. Co.*, No. 15 Civ. 304 (PAE), 2015 WL 891663, at *2 (S.D.N.Y. Feb. 25, 2015) (quoting *In re Arbco Cap. Mgmt., LLP*, 479 B.R. 254, 262 (S.D.N.Y. 2012) (collecting cases)); *accord In re Lyondell Chem. Co.*, 467 B.R. at 719 ("To the extent the core/non-core distinction held a privileged position among the *Orion* factors before *Stern*, this is no longer the case.").

The second factor to consider under *Orion* is whether the claims at issue are legal or equitable, *see* 4 F.3d at 1101, and thus "whether a right to a jury trial exists," *Hometrust Mortg. Co.*, 2015 WL 891663, at *2 (citing *Orion*, 4 F.3d at 1101).  Third, the Court must consider the other factors identified by *Orion*, namely the "efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." 4 F.3d at 1101.

### III. Discussion

#### A. Withdrawal of the Reference

The district court may withdraw the reference to the bankruptcy court so long as LMI's motion is timely, and "cause" is shown. 28 U.S.C. § 157(d); *accord Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at *2 & n.8.

"Courts in this district have defined timely to mean 'as soon as possible after the moving party has notice of the grounds for withdrawing the reference.'" *Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at *2 n.8 (quoting *In re FMI Forwarding Co.*, 2005 WL 147298, at *6 (S.D.N.Y. Jan. 24, 2005)). Here, LMI filed their motion to withdraw eight days after their answer. *Compare* Dkt. 20-3 (answer in adversary proceeding filed on December 28, 2020) *with* Motion (filed on January 5, 2021). The Diocese does not contend that the motion was filed untimely, and the Court concludes that it was. *See In re Kentile Floors, Inc.*, No. 95 Civ. 2470 (LLS), 1995 WL 479512, at *2 (S.D.N.Y. Aug. 10, 1995) (explaining that a defendant "did not have grounds for a motion to withdraw the reference until it filed an answer and jury demand").

In order to determine whether LMI have shown "cause," the Court turns to the factors outlined in *Orion*, 4 F.3d at 1101, as modified by *Stern*, 564 U.S. at 478-82, 488-99.

#### 1. The Bankruptcy Court's Final Adjudicative Authority

Article III of the United States Constitution provides:

> The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

U.S. Const., art. III, § 1. "Congress may not 'withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty.'" *Stern*, 564

U.S. at 484 (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272 (1856)). There are "three instances where a bankruptcy court may adjudicate finally a claim at issue: (1) if the claim involves a public right; (2) if the process of adjudicating the creditor's proof of claim would necessarily resolve a counterclaim; or (3) if the parties consent to final adjudication by the bankruptcy court." *In re: FKF 3, LLC*, No. 13 Civ. 3601 (KMK), 2016 WL 4540842, at *6 (S.D.N.Y. Aug. 30, 2016) (citing *Stern*, 564 U.S. at 478-82, 488-99); *accord In re Lyondell Chem. Co.*, 467 B.R. at 720.

The first scenario does not apply here because the claims at issue involve private rights rather than public rights. Although there are "varied formulations of the public rights exception," *Stern*, 564 U.S. at 493, "what makes a right 'public' rather than private is that the right is integrally related to particular Federal Government action," *id.* at 490-91; *accord id.* at 490 (explaining that the Supreme Court "has continued . . . to limit the [public rights] exception to cases in which the claim at issue derives from a federal regulatory scheme, or in which resolution of the claim by an expert Government agency is deemed essential to a limited regulatory objective within the agency's authority"). Here, the claims at issue—declaratory judgment and breach of contract—are private rights because "a state law breach of contract claim does not implicate a public right." *Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at *4; *accord In re Arbco Cap. Mgmt., LLP*, 479 B.R. at 266 (finding that breach of contract and other state common law claims involved "indisputably private rights").[4] Indeed, claims "under state common law between two private parties" do not fall within the public rights exception. *Stern*, 564 U.S. at 493. Nor are the second or third exceptions applicable here. LMI are not creditors to the Diocese, and the parties did not

---

[4] The Diocese does not argue that its declaratory judgment claim involves a public right even if its breach of contract claims do not, and the Court sees no reason why this would be the case. *See Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at *4 n.12.

consent to final adjudication by the bankruptcy court.

The Diocese does not seem to contend otherwise. *See* Opposition at 13-14. Rather than argue that the bankruptcy court could have final adjudicative authority over the claims pursuant to *Stern*, the Diocese instead focuses on whether the claims are "core" or "non-core." *See* Opposition at 8-14. Such a determination does not seem particularly important post-*Stern*. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 486 B.R. 579, 582 n.1 (S.D.N.Y. 2013) ("[T]he majority of courts in this Circuit have determined that the primary *Orion* factor—whether or not a proceeding is core or non-core—has been supplanted by a determination 'of whether the bankruptcy court may finally determine a proceeding or whether the bankruptcy court's proposals must be reviewed *de novo* by a district court.'" (quoting *Dynegy Danskammer, L.L.C. v. Peabody Coaltrade Int'l Ltd.*, 905 F. Supp. 2d 526, 530 (S.D.N.Y. 2012))). In other words, even if the Court agreed that the claims here were core, it would not change the fact that the bankruptcy court would not have final adjudicative authority over them, which is the relevant question after *Stern*.

In all events, the Court is unpersuaded by the Diocese's argument. In support of its contention that the claims are "core," the Diocese primarily relies on *In re United States Lines, Inc.*, 197 F.3d 631 (2d Cir. 1999). In that case, the debtors faced thousands of claims from former employees, most of which alleged asbestos-related injuries, and filed for Chapter 11 protection. *Id.* at 635. A trust that was the successor-in-interest for the debtors filed an adversary proceeding in the bankruptcy court in which it sought a declaratory judgment regarding the trust's rights under various insurance policies that allegedly covered the claims at issue. *Id.* The relevant question was whether that declaratory judgment action was "core" or not. *Id.* at 636.

The Second Circuit held that it was. *Id.* at 639. The court explained that although disputes relating to contracts that formed prior to the bankruptcy petition typically are non-core, "[r]esolving

the disputes over the [insurance] policies [at issue in *United States Lines*] ha[d] a much more direct impact on the core administrative functions of the bankruptcy court." *Id.* at 638. The policies in *United States Lines* "represent[ed] the only potential source of cash available" to the creditors. *Id.* And because the policies included "pay-first provisions," such proceeds would not be available to the creditors unless the trust paid the claims first. *Id.* Doing so would be difficult because the trust's insolvency meant it would be "forced to satisfy the pay-first requirement by means of complex, creative payment schemes." *Id.* The court thus concluded that the declaratory judgment claim was core because it "affect[ed] the bankruptcy court's core administrative function of asset allocation among creditors." *Id.* at 639.

The Second Circuit has since made clear that the holding of *United States Lines* was driven by "the mutually re-enforcing effects of two factors." *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 448 (2d Cir. 2005). First, the policies at issue in *United States Lines* "were the *only asset available* to pay the asbestos claimants," and, second, "the policies were pay-first policies that required the trustee to pay the claims and then seek indemnification." *Id.* (emphasis added) (citing *United States Lines*, 197 F.3d at 638). Thus, in *Mt. McKinley Insurance Co.*, the Second Circuit declined to apply *United States Lines* in part because "the proceeds of the affiliate policies [at issue in *Mt. McKinley Insurance Co.*] [were] not the only or even the major assets available to pay the asbestos claimants." *Id.* at 449.

In *Roman Catholic Diocese of Rockville Centre, New York v. Arrowood Indemnity Co.*, Judge Caproni reasoned that *United States Lines* "should be limited to its facts," meaning that "a declaratory judgment action about the scope of insurance policies is only core when the insurance policies are the lone asset and provisions in the insurance policies necessarily implicate core bankruptcy functions to enable the proceeds of the policies to be accessed." 2021 WL 1978560, at

11

\*6; *see also In re: Residential Cap., LLC*, No. 15 Civ. 2712 (JPO), 2015 WL 9302834, at \*4 (S.D.N.Y. Dec. 21, 2015) (explaining that *United States Lines* "has been narrowed by later rulings"). The Diocese nevertheless insists that *United States Lines* controls here because the insurance policies are "an essential asset of the estate" and the LMI policies contained "pay first" provisions. Opposition at 9, 11 (internal quotation marks and emphasis omitted). LMI dispute whether its policies included pay-first provisions, Reply at 4, but regardless, the Court finds *United States Lines* inapplicable to this case. Central to the Second Circuit's reasoning in *United States Lines* was that the policies there "represent[ed] the only potential source of cash available." 197 F.3d at 638. Courts in this District have distinguished *United States Lines* on that basis. *See Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at \*7 (declining to apply *United States Lines* in part because "the Diocese acknowledge[d] that the insurance proceeds are not the estate's only asset"); *DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587, 592-93 (S.D.N.Y. 2012) (declining to apply *United States Lines* because the debtor did not represent that the insurance claims "represent[ed] the only potential source of cash available to the estate"). Unlike the debtor in *United States Lines*, the policies here are not the Diocese's only potential source of cash. *See In re The Roman Cath. Diocese of Rockville Ctr., N.Y.*, No. 20-12345 (SCC) (Bankr. S.D.N.Y.), Dkt. 299 (listing on a Schedule A/B more than $83.5 million in "[c]ash, cash equivalents, and financial assets" and more than $93 million in total assets); *see also Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL1978560, at \*6 n.13. *United States Lines* therefore does not control.[5]

---

[5] Evidently all cases in this District subsequent to *United States Lines* have limited the holding of *United States Lines* to its facts "except for one." *Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at \*6. In *In re County Seat Stores, Inc.*, the court concluded that the reasoning of *United States Lines* extended to any situation in which "the bankruptcy court could not easily proceed with its core function of effecting an equitable reorganization without

Nor is the Court persuaded by the Diocese's argument that the claims are rendered core because the LMI policies allegedly included provisions that require LMI to participate in any settlement process and consent to any settlement amount. Opposition at 12-13. Setting aside the fact that LMI say its policies contained no such requirement, *see* Reply at 6, the Diocese cites no authority for this novel idea, but argues that such a provision is "like the pay-first provision cited in [*United States*] *Lines*." Opposition at 13. This is incorrect because "[c]onsent-to-settlement provisions . . . do not require any allocation of assets from the estate." *Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at *8. The Diocese's attempt to extend *United States Lines* to insurance policies with consent-to-settlement provisions fails.

Instead, the Court is convinced that the claims here are non-core. "A claim is non-core if it 'does not depend on bankruptcy laws for its existence and . . . could proceed in a court that lacks federal bankruptcy jurisdiction.'" *DeWitt Rehab. & Nursing Ctr., Inc.*, 464 B.R. at 591 (quoting *N. Am. Energy Conservation, Inc. v. Interstate Energy Res., Inc.*, No. 00 Civ. 4302 (SHS), 2000 WL 1514614, at *2 (S.D.N.Y. Oct. 10, 2000)). On the contrary, "[a] proceeding that involves rights created by bankruptcy law, or that could arise only in a bankruptcy case, is a core proceeding." *Id.* Whether a contract claim is core or non-core depends on "(1) whether a contract is antecedent to the reorganization period; and (2) the degree to which the proceeding is independent of the reorganization." *In re Millennium Seacarriers, Inc.*, 419 F.3d 83, 97 (2d Cir. 2005) (quoting *United States Lines*, 197 F.3d at 637).

---

deciding the coverage dispute in the case." No. 01 Civ. 2966 (JGK), 2002 WL 141875, at *5 (S.D.N.Y. Jan. 31, 2002). In *Mt. McKinley Insurance Co.*, the Second Circuit "assum[ed] without deciding that *Country Seat Stores* was correctly decided," but noted that it, like *United States Lines*, involved a situation in which the insurance policies at issue were "the only source of potential payment for tort claims." 399 F.3d at 450. *In re Country Seat Stores* is thus similarly distinguishable.

Here, the contracts at issue were entered into decades before the Diocese filed its bankruptcy petition. *See* Chapin Decl. ¶ 7. This alone usually means that the contract claims are non-core. *See Orion*, 4 F.3d at 1102 ("[W]e hold that this breach-of-contract action by a debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, is non-core."); *Beard v. Braunstein*, 914 F.2d 434, 443 (3d Cir. 1990) ("It is clear that to the extent that the claim is for pre-petition contract damages, it is non-core."). Further, the claims are independent of the reorganization and, as discussed above, do not fall within the narrow set of circumstances outlined in *United States Lines*. Instead, the claims here involve quintessential contractual disputes that "could proceed in a court that lacks federal bankruptcy jurisdiction." *DeWitt Rehab. & Nursing Ctr., Inc.*, 464 B.R. at 591. The Court thus agrees with Judge Caproni's well-reasoned conclusion: "[B]ecause the Diocese's claims . . . do not turn on bankruptcy laws, arose before the bankruptcy petition was filed, are independent of the bankruptcy proceedings, and do not fall under the [*United States*] *Lines* exception, the claims at issue are non-core." *Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at *8.

In sum, the Court concludes that the claims here are non-core and that, under *Stern*, the bankruptcy court would not have final adjudicative authority over the claims. While these factors strongly weigh in favor of withdrawal of the reference, the Court must consider the other *Orion* factors before reaching a final decision. Still, "where the Bankruptcy Court lacks final adjudicative authority, the remaining *Orion* considerations will often tend to point toward withdrawal." *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 467 (S.D.N.Y. 2011).

2. **Jury Trial Rights**

"*Orion* instructs courts to consider whether [the claim] is legal or equitable, and consequently whether the litigants are afforded the right to a jury trial." *In re: FKF 3, LLC*, 2016

WL 4540842, at *14 (alteration in original) (internal citation and quotation marks omitted). The Seventh Amendment guarantees "the right of trial by jury" only "[i]n Suits at common law," not in equity. U.S. Const. amend VII; *accord Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1328 (2d Cir. 1993).

LMI made a jury demand here, and the Diocese does not seem to dispute that the jury trial right attaches to the claims at issue here. *See* Motion at 22; Opposition at 21. The "standard test" for determining whether the right to a jury trial attaches "is to determine first whether the action would have been deemed legal or equitable in 18th century England, and second whether the remedy sought is legal or equitable in nature." *Germain*, 988 F.2d at 1328. The Court agrees that the claims here (breach of contract and declaratory judgment) are legal in nature and thus LMI are entitled to a jury trial. *See Citigroup Inc. v. VDN Sys., Inc.*, No. 08 Civ. 7527 (SHS), 2008 WL 5274091, at *2 (S.D.N.Y. Dec. 16, 2008) ("[A]ctions seeking damages for breach of contract are traditionally considered to be legal in nature."); *Stonewall Ins. Co. v. Nat'l Gypsum Co.*, No. 86 Civ. 9671 (JSM), 1992 WL 281401, at *1 (S.D.N.Y. Sept. 25, 1992) (concluding that a declaratory judgment action "is essentially legal in nature and thus a jury trial may be demanded").

"[T]he [C]onstitution prohibits bankruptcy courts from holding jury trials in non-core matters." *Orion*, 4 F.3d at 1101. Thus, "[i]f a case is non-core and a jury demand has been filed, a district court might find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference." *Id.* at 1101. Nevertheless, the Court could conclude otherwise because a given case may be "unlikely to reach trial" and may be best left in the bankruptcy court for pre-trial proceedings. *Id.* at 1102. Therefore, LMI's request for a jury trial on the claims weighs only slightly in favor of withdrawing the reference. *See Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at *11 (concluding that this factor "weigh[ed] only slightly in favor of

withdrawing the reference" because the case is "in its early stages," "is far from trial ready" and "[l]ike most other civil cases, this case is unlikely to be tried").

### 3. Other *Orion* Factors

The Court must also consider the other factors identified by *Orion*, namely the "efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." 4 F.3d at 1101. The Court concludes that each of these factors is either neutral or weighs in favor of withdrawing the reference.

First, the Court considers whether withdrawal of the reference would promote "efficient use of judicial resources." *Id.* Because the bankruptcy court could not render final judgment on the claims here, "this Court would ultimately be required to review de novo" the bankruptcy court's proposed findings of fact and conclusions of law. *Dynegy Danskammer, L.L.C.*, 905 F. Supp. 2d at 533. Such a process is generally inefficient as it is simpler to "adjudicate the proceedings in a single court." *Id.* But in certain cases, it may make more sense to keep the action in the bankruptcy court. *See, e.g.*, *Hometrust Mortg. Co.*, 2015 WL 891663, at *4 (declining to withdraw the reference in a complex bankruptcy action regarding Lehman Brothers because the bankruptcy court was already "immersed in the issues" and the bankruptcy judge had "far greater familiarity with the underlying facts of the Lehman bankruptcy" and "a superior understanding of the law and theories relevant to the parties' dispute." (internal quotation marks omitted)). Nothing here suggests it would be more efficient to decline to withdraw the reference. "Contract disputes are the bread and butter of district courts" and "bankruptcy courts do not have any 'specialized knowledge' that 'will contribute to swifter resolution of the claims at issue.'" *Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at *8 (quoting *Lehman Brothers Holdings Inc. v. Wellmont Health Sys.*, No. 14 Civ. 1083 (LGS), 2014 WL 3583089, at *4 (S.D.N.Y. 2014)).

Second, the Court considers possible "delay and cost to the parties." *Orion*, 4 F.3d at 1101. Neither party argues that withdrawal would have any effect on delay, and the Court concludes that this factor is neutral. *See In re Residential Cap., LLC*, 519 B.R. 593, 605 (S.D.N.Y. 2014). As for costs, this factor weighs slightly in favor of withdrawal. The need to litigate first in the bankruptcy court and then again in the district court could make the proceedings generally more costly for the parties.

The next *Orion* factor is "uniformity of bankruptcy administration." 4 F.3d at 1101. "With respect to uniformity of bankruptcy law, this factor is neutral because the claims at issue are non-core claims that do not arise under bankruptcy law." *Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at *10; *accord Dynegy Danskammer, L.L.C.*, 905 F. Supp. 2d at 533 (explaining that "[c]ourts routinely have found no benefit" for uniformity of bankruptcy administration "where claims are based on state law"). The Diocese argues that "intra-case uniformity" weighs against withdrawal of the reference. Opposition at 19-20 (internal quotation marks omitted). The Court rejects this for the reasons articulated by Judge Caproni. *See Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at *10. The case involving Arrowood is already independently proceeding regardless of whether the Court grants LMI's motion to withdraw the reference as to the claims relevant to LMI. *See id.* at *2 n.6.

Finally, the Court considers whether forum shopping is afoot in LMI's attempt to withdraw the reference. *Orion*, 4 F.3d at 1101; *see Scott v. AIG Prop. Cas. Co.*, No. 17 Civ. 1052 (GHW), 2017 WL 1380607, at *4 (S.D.N.Y. 2017) (considering whether the defendants were "motivated by forum shopping in seeking to withdraw the bankruptcy reference"). Nothing indicates that LMI are engaging in forum shopping. This factor is therefore neutral, but certainly does not counsel

Case 1:21-cv-00071-JPC   Document 50   Filed 09/03/21   Page 18 of 20

against withdrawal of the reference.[6]

\* \* \*

In sum, the *Orion* factors, as modified by *Stern*, weigh in favor of withdrawal of the bankruptcy reference. The bankruptcy court does not have final adjudicative authority over the "non-core" claims at issue, which strongly weighs in favor of withdrawal of the reference. LMI's right to a jury trial for the claims at issue also cuts slight in favor of withdrawal. Several of the other considerations under *Orion* are neutral or at least do not weigh against withdrawal, and considerations of judicial efficiency support withdrawal. The Court thus grants LMI's motion for withdrawal of the reference to the bankruptcy court.

## B. Joinder

The Diocese does not appear to oppose the Fireman's Fund Insurance Company, Interstate Fire & Casualty Company, and National Surety Corporation's joinder in LMI's motion for withdrawal of the reference. *See* Dkt. 14. That motion appears to assume that one court in this District would consider whether to withdraw the reference with regard to the entire adversary proceeding. But LMI's motion to withdraw the reference was not treated as related to Arrowood's motion to withdraw the reference. *See Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at \*2 n.6.

The purported joinder appears to be an attempt to have the Diocese's claims with regard to

---

[6] Although the Diocese itself did not raise the arguments presented by the Unsecured Creditors, the Court is unpersuaded by those arguments too. *See* Unsecured Creditors' Joinder. The Court does not believe LMI waived their right to move for withdrawal of the reference. And the Unsecured Creditors' reliance on *Dinallo v. Dunav Insurance Co.*, 672 F. Supp. 2d 368 (S.D.N.Y. 2009), *aff'd*, 402 F. App'x 595 (2d Cir. 2010), is misplaced. *Dinallo* held that a party that had agreed to litigate in "any Court of competent jurisdiction" waived its right to remove the action from state court to federal court. 672 F. Supp. 2d at 370-71 (internal quotation marks omitted). The Court sees no reason why this logic should extend to the context of withdrawal of a bankruptcy reference.

18

those insurance companies withdrawn from the bankruptcy court as well. *See* Dkt. 14 (seeking a withdrawal of "the reference of the Adversary Proceeding"). However, the motion fails to explain anything about the Fireman's Fund Insurance Company, Interstate Fire & Casualty Company, or National Surety Corporation insurance policies. And those policies may well differ in "several key ways" from LMI's policies, which could affect the Court's analysis for whether the reference should be withdrawn as to those claims. *See Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at *2 n.6.

The Court thus denies the other insurance companies' motion, Dkt. 14, to the extent that it seeks a withdrawal of the reference with regard to claims against insurance companies other than LMI. Fireman's Fund Insurance Company, Interstate Fire & Casualty Company, and National Surety Corporation may file their own motions for withdrawal of the reference with regard to the Diocese's claims against them if they wish. If one or more of those entities believes that such a motion should be deemed related to this action or the action pending before Judge Caproni, *see Roman Catholic Diocese of Rockville Centre., New York v. Arrowood Indemnity Co.*, No. 20 Civ. 11011 (VEC) (S.D.N.Y.), it may file a statement of relatedness requesting such treatment.[7]

### IV. Conclusion

For the reasons stated above, LMI have shown cause for permissive withdrawal of the Diocese's claims against it pursuant to 28 U.S.C. § 157(d). The Court thus grants LMI's timely motion for withdrawal of the reference. The court denies the motion filed by Fireman's Fund Insurance Company, Interstate Fire & Casualty Company, and National Surety Corporation. The

---

[7] There is one final matter to address. LMI filed a motion for a more definite statement. *See* Dkt. 34. The label for this motion appears to be incorrect. Instead, the document explains that ECF troubles led LMI to file late its Reply and Reply to Unsecured Creditors. To the extent it is necessary, the Court grants LMI an extension *nunc pro tunc* with regard to these filings.

Clerk of Court is respectfully directed to terminate the motions pending at Docket Numbers 1, 14, and 34.

The Clerk of Court is respectfully directed to terminate all Defendants in this action except for Certain Underwriters at Lloyds, London & Certain London Market Companies. Finally, the Clerk of Court is respectfully directed to amend the case caption to read as follows: *The Roman Catholic Diocese of Rockville Centre, New York v. Certain Underwriters at Lloyds, London & Certain London Market Companies*.

SO ORDERED.

Dated: September 3, 2021
New York, New York

JOHN P. CRONAN
United States District Judge