REED SMITH LLP
John B. Berringer, Esq.
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
E-mail: jberringer@reedsmith.com

REED SMITH LLP
Timothy P. Law, Esq. (*pro hac vice*)
Esther Y. Kim, Esq.
1717 Arch Street
Three Logan Square, Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
E-mail: tlaw@reedsmith.com
E-mail: esther.kim@reedsmith.com

*Counsel for Plaintiff, The Roman Catholic Diocese of Rockville Centre, New York*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,<br><br>Plaintiff,<br><br>-v-<br><br>CERTAIN UNDERWRITERS AT LLOYDS, LONDON & CERTAIN LONDON MARKET COMPANIES namely Ancon Insurance Co. (UK) Ltd.,  Assicurazioni Generali T.S.,  British National Insurance Co. Ltd. formerly known as British National Life Insurance Society Ltd.,  CX Reinsurance Co. Ltd. formerly known as C.N.A. Re of London, Dominion Insurance Co. Ltd., Excess Insurance Co. Ltd., London & Edinburgh General Insurance Co. Ltd., Sovereign Marine & General Insurance Co. Ltd., St. Katherine Insurance Co. Ltd., Storebrand Insurance Ltd., Taisho Marine & Fire (UK) Ltd.,  Terra Nova Insurance Co. Ltd., Tokio Marine & Fire (UK) Ltd., Turegum Insurance Co. Ltd., Unionamerica Insurance Co. Ltd. and Yasuda Fire & Marine (UK) Ltd., and LEXINGTON INSURANCE COMPANY,<br><br>Defendants. | Case No.: 1:21-cv-00071-AS<br><br>**ORAL ARGUMENT REQUESTED** |

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.    FACTUAL BACKGROUND ...................................................................................... 2

    A.    The CVA and ASA Claims .............................................................................. 2

    B.    Overview of the LMI Insurance Program ....................................................... 3

    C.    Relevant Language of the LMI Policies ......................................................... 4

    D.    LMI Previously Made Interim Payments to the Diocese Under the LMI
           Policies. ........................................................................................................... 6

III.    LEGAL STANDARD ................................................................................................. 7

    A.    Summary Judgment Standard .......................................................................... 7

    B.    Policy Interpretation Standard ........................................................................ 7

IV.    LEGAL ARGUMENT ............................................................................................... 8

    A.    The Plain Language of the LMI Policies Requires LMI to Pay Promptly All
           Loss, Including Defense Costs, If Loss Exceeds a Retention Amount .................. 8

           1.    LMI Have A Duty to Reimburse Defense Costs Under the LMI
                   Policies for Claims and Suits That Are Potentially Covered. ..................... 8

           2.    LMI Must Pay Promptly Defense Expenses Incurred by the Diocese
                   If Losses (Including Defense Expenses) Exceed the Retention ............... 11

    B.    The Diocese's Interpretation of the Policy Language is Commercially
           Reasonable. ..................................................................................................... 17

    C.    The Prior Course of Performance Supports the Diocese's Interpretation of
           the LMI Policies ............................................................................................ 18

    D.    Under New York Law, the Insolvency or Bankruptcy of the Diocese Does
           Not Release LMI from Its Obligation To Pay. ............................................. 19

V.    CONCLUSION ......................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Admiral Ins. Co. v. Grace Indus., Inc.*,
   409 B.R. 275 (E.D.N.Y. 2009) ...................................................................................19

*Am. Safety Indem. Co. v. Vanderveer Estates Holding, LLC*,
   328 B.R. 18 (Bankr. E.D.N.Y. 2005), *aff'd sub nom. Am. Safety Indem. Co. v.*
   *Official Comm. of Unsecured Creditors*, 2006 U.S. Dist. LEXIS 101425
   (E.D.N.Y. Oct. 3, 2006) ..............................................................................................19

*American Home Products Corp. v. Liberty Mut. Ins. Co.*,
   565 F. Supp. 1485 (S.D.N.Y. 1983)...........................................................................18

*Bretton v. Mut. of Omaha Ins. Co.*,
   110 A.D.2d 46, 492 N.Y.S.2d 760 (1st Dep't 1985), *aff'd*, 66 N.Y.2d 1020,
   499 N.Y.S.2d 397 (1985)...............................................................................................7

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)........................................................................................................7

*City of N.Y. v. Evanston Ins. Co.*,
   39 A.D.3d 153, 830 N.Y.S.2d 299 (2d Dep't 2007).................................................17

*DiBella v. Hopkins*,
   403 F.3d 102 (2d Cir. 2005).........................................................................................16

*Erie Railroad v. Tomkins*,
   304 U.S. 64 (1938).......................................................................................................16

*Fed. Ins. Co. v. Americas Ins. Co.*,
   258 A.D.2d 39, 691 N.Y.S.2d 508 (1st Dep't 1999) ................................................18

*Federal Ins. Co. v. Kozlowski*,
   18 A.D.3d 33, 792 N.Y.S.2d 397 (1st Dep't 2005) ....................................... *passim*

*Fight Against Coercive Tactics Network v. Coregis Ins. Co.*,
   926 F. Supp. 1426 (D. Colo. 1996).............................................................................15

*FSLIC v. Burdette*,
   718 F. Supp. 649 (E.D. Tenn. 1989)..........................................................................15

*Gon v. First State Insurance Co.*,
   871 F.2d 863 (9th Cir. 1989) ........................................................................13, 15, 16

*Gulf Underwriters v. Burris*,
 674 F.3d 999 (8th Cir. 2012) .................................................................20

*Huminski v. Corsones*,
 396 F.3d 53 (2d Cir. 2004) .....................................................................7

*Kimmins Indus. Serv. Corp. v. Reliance Ins. Co.*,
 19 F.3d 78 (2d Cir. 1994) ...................................................................8, 12

*Kurtin v. National R.R. Passenger Corp.*,
 887 F. Supp. 676 (S.D.N.Y. 1995)...........................................................7

*In re Lipper Holdings, LLC v. Trident Holdings, LLC*,
 1 A.D. 3d 170, 766 N.Y.S.2d 561 (1st Dep't 2003) ...............................17

*In re Sept. 11 Litig.*, 906 F. Supp. 2d 295, 304 (S.D.N.Y. 2012), *aff'd sub nom.*
 *World Trade Ctr. Props. LLC v. QBE Int'l Ins. Ltd.*, 627 F. App'x 10 (2d Cir.
 Sep. 17, 2015) ........................................................................................7

*Little v. MGIC Indemnity Corp.*,
 836 F.2d 789 (3d Cir. 1987)..............................................................13, 14

*Mastrovincenzo v. City of N.Y.*,
 435 F.3d 78 (2d Cir. 2006).......................................................................8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
 475 U.S. 574 (1986).................................................................................7

*McCuen v. American Cas. Co. of Reading, Pa.*,
 946 F.2d 1401 (8th Cir. 1991) ...............................................................14

*McGinniss v. Employers Reinsurance Corp.*,
 648 F. Supp. 1263 (S.D.N.Y. 1986)...................................................14, 17

*Nu-Way Envtl. v. Planet Ins. Co.*,
 95 Civ. 573, 1997 U.S. Dist. LEXIS 11884 (S.D.N.Y. Aug. 5, 1997) ............14, 17

*Okada v. Magic Indem. Corp.*,
 823 F.2d 276 (9th Cir. 1986) .........................................................14, 15, 16

*Pepsico v. Continental Cas. Co.*,
 640 F. Supp. 656 (S.D.N.Y. 1986)..........................................................14

*Port Authority of New York & New Jersey v. Brickman Group Ltd., LLC*,
 181 A.D.3d 1, 115 N.Y.S.3d 246 (1st Dep't 2019) ........................... *passim*

*Rollo v. Servico N.Y., Inc.*,
 79 A.D.3d 1799, 914 N.Y.S.2d 811 (4th Dep't 2010)............................19

*Rosciti v. Ins. Co. of Pa.*,
   659 F.3d 92 (1st Cir. 2011) ..............................................................................20

*Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*,
   73 F.3d 1178 (2d Cir. 1995) ........................................................................15, 16

*Sturgill v. Beach at Mason Ltd. Partnership*,
   Civ. Action No. 1:14cv0784, 2015 WL 6163787 (S.D. Ohio 2015) ....................20

*URS Corp. v. Zurich Am. Ins. Co.*,
   979 N.Y.S.2d 506 (Sup. Ct. N.Y. Cty. 2014) ......................................................7

*VAM Check Cashing Corp. v. Fed. Ins. Co.*,
   699 F.3d 727 (2d Cir. 2012) ................................................................................7

*West v. Am. Tel. & Tel. Co.*,
   311 U.S. 223 (1940) ..........................................................................................16

*Westpoint Int'l, Inc. v. Am. Int'l S. Ins. Co.*,
   71 A.D.3d 561, 899 N.Y.S.2d 8 (1st Dep't 2010) ...........................................9, 10

*Westview Assocs. v. Guar. Nat'l Ins. Co.*,
   95 N.Y.2d 334, 717 N.Y.S.2d 75 (2000) ..............................................................8

*World Trade Ctr. Props., LLC v. Hartford Fire Ins. Co.*,
   345 F.3d 154 (2d Cir. 2003) ................................................................................8

*Yangming Marine Transport Corp. v. East Coast Chemicals & Paper Corp.*,
   643 F. Supp. 995 (S.D.N.Y. 1986) ....................................................................18

**Statutes**

New York Insurance Law § 3420 ................................................................................19

**Rules**

Fed. R. Civ. P. 56(a) ...................................................................................................7

**Other Authorities**

Douglas R. Richmond, *Liability Insurance and the Duty to Pay Defense Expenses
   Versus the Duty to Defend*, 52 Tort Trial & Ins. Prac. L. J. 1, 9 (2016) .................11

Pursuant to the Court's March 12, 2024 Order (ECF No. 148), Plaintiff The Roman Catholic Diocese of Rockville Centre (the "Diocese"), by and through its undersigned counsel, hereby respectfully submits this memorandum of law in support of its Motion for Partial Summary Judgment against Defendants Certain Underwriters at Lloyd's, London and Certain London Market Companies ("LMI")[1] on its Declaratory Judgment Count against LMI, seeking the declaration requested in subsection (d) of its Prayer for Relief:

> LMI owe a duty to pay or reimburse the Diocese for its defense costs in the Underlying Lawsuits and in the defense of claims in the Bankruptcy Case as they are incurred, rather than awaiting the completion of the claim or suit, to the extent they are covered under either the Aggregate Excess Agreement or fall within the Specific Excess Layer.

## I.     INTRODUCTION

LMI agreed in its insurance policies to indemnify the Diocese for "all sums" the Diocese shall be obligated to pay (broadly defined as "ultimate net loss") on account of personal injuries suffered or alleged to have been suffered by any person or persons arising out of any occurrence happening during the period of Insurance.  The term "ultimate net loss" is defined to include not just settlements or judgments, but also "expenses for doctors, lawyers, nurses and investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits

---

[1] As set forth in LMI First Set of Phase I Interrogatories, the complete list of LMI Defendants are identified as follows: Certain Underwriters at Lloyd's, London subscribing to various policies (misidentified in the caption as "Certain Underwriters at Lloyd's, London & Certain Market Companies"), Ancon Insurance Co. (UK) Ltd., Assicurazioni Generali T.S., Dominion Insurance Co. Ltd., Catalina Worthing Insurance Ltd f/k/a HFPI (as Part VII transferee of Excess Insurance Co. Ltd. and London & Edinburgh Insurance Co. Ltd. as successor to London & Edinburgh General Insurance Co. Ltd.) (misidentified in the caption as "Excess Insurance Co. Ltd." and as "London & Edinburgh General Ins. Co. Ltd."), River Thames Insurance Company Limited (as the legal successor to Unionamerica Insurance Company Limited, which was itself the legal successor to: (i) St Paul Reinsurance Company Limited (formerly known as Mercury Reinsurance Company (UK) Limited and St Paul Fire & Marine Insurance Company (UK) Limited) and (ii) certain business of St Paul Travelers Insurance Company Limited (formerly known as St Katherine Insurance Company Limited, St Katherine Insurance Company Public Limited Company and St. Paul International Insurance Company Limited) (misidentified in the caption as "St. Katherine Insurance Co. Ltd." and "Unionamerica Insurance Co. Ltd."), Riverstone Insurance (UK) Limited (as successor in interest to Terra Nova Insurance Ltd.) (misidentified in the caption as "Terra Nova Insurance Co. Ltd."), Harper Insurance Ltd. (formerly known as Turegum Insurance Company) (misidentified in the caption as "Turegum Insurance Co. Ltd."), and Sompo Japan Nipponkoa Insurance Company of Europe Limited (formerly known as Yasuda) (misidentified in the caption as "Yasuda Fire & Marine (UK) Ltd.").

which are paid as a consequence of any occurrence covered hereunder." The question raised by this motion is "when" those liabilities must be paid, and the LMI Policies provide the answer: "[w]hen it has been determined that Underwriters are liable under this Insurance, Underwriters shall thereafter *promptly* reimburse the Assured for all payments made in excess of the [retention] amounts." (emphasis added). When the amounts of ultimate net loss on covered claims exceed the retention amounts, LMI must promptly pay or reimburse the Diocese for any payments in excess of the retentions, as it has in the past. Moreover, New York law makes clear that even if the Diocese were unable to pay the retentions or the losses that fall within LMI's layer, that will not excuse LMI from its obligation to pay all loss amounts that fall within the LMI layers of insurance.

In determining whether defense costs are covered, New York law establishes that either the duty to defend or (as relevant here) the duty to pay defense expenses turns solely on whether, as to each of the underlying actions, the complaint alleges any facts or grounds that bring the action potentially within the coverage purchased. For any and all actions in which LMI concedes the possibility of coverage, such as for claims brought under the Child Victims Act (CVA) and Adult Survivors Act (ASA), LMI must pay defense expense when the losses are in excess of the retentions and potentially fall within the relevant coverage. Based on the plain language of their insurance policies, LMI have made interim payments in the past with respect to other types of claims; they should do so now with CVA and ASA expenses.

## II.    FACTUAL BACKGROUND

### A.    The CVA and ASA Claims

After the CVA took effect in August 2019, the Diocese faced hundreds of claims and lawsuits alleging personal injury. Plaintiffs' Rule 56.1 Statement, ¶ 1. Many of those claimants

allege that they suffered personal injury during the policy periods that LMI insured the Diocese. *Id.*, ¶ 2. The Diocese faces substantial potential liability for damages to compensate for bodily injury alleged by those claimants; indeed, due to those liabilities, the Diocese filed for bankruptcy protection in October 2020.  *Id.*, ¶ 3. In May 2022, New York enacted the ASA, which (like the CVA) revived liability for previously time-barred claims of sexual abuse by reopening the statute of limitations for a limited period.  *Id.*, ¶ 4. Claims alleging liability as a result of the ASA have been filed against the Diocese, including from some CVA claimants who allege that their abuse continued into their adult years.  *Id.*, ¶ 5.

### B.    Overview of the LMI Insurance Program

From October 1976 to 1986, LMI sold insurance policies to the Diocese, including those policies listed on the attached Exhibit A to the Declaration of John B. Berringer ("Berringer Decl.") (collectively, the "LMI Policies").  *Id.*, ¶ 6.  With regard to the primary layer of insurance in those years, the LMI Policies include a Specific Excess Agreement that insures the Diocese above a $100,000 self-insured retention (SIR) per occurrence.  *Id.*, ¶ 7.  The Diocese's SIR payments flow into the "Assured's Loss Fund" regardless of whether they are for defense expenses, settlements, or judgments, and for multiple lines of insurance, such as automobile liability, automobile physical damage, general liability, and workers' compensation insurance.  *Id.*, ¶ 8.  Under the Aggregate Agreement (sometimes referred to as the "aggregate excess" coverage), LMI owes coverage to the Diocese for loss amounts falling within the SIR once the Diocese has made a certain aggregate amount of SIR payments for a particular annual period.  *Id.*, ¶ 9.  The Assured's Loss Fund has annual aggregate retention amounts ranging from $1,200,000 in 1976 to $4,500,000 in 1986.  *Id.*, ¶ 10.  The annual aggregate retention amount is the maximum amount the Diocese pays for losses and expenses in each policy period before an Aggregate Agreement with LMI is triggered.  *Id.*, ¶

11.  Once the Aggregate Agreement is triggered, LMI are responsible for paying the Diocese's losses within the SIR of $100,000 per occurrence up to the insured limit of the Aggregate Agreement, which was $500,000 per year from 1976 to 1982, when it increased to $1,000,000 per year through 1986.  *Id.*, ¶ 12.  The Diocese has paid losses in excess of the annual aggregate SIR limit for a number of policy periods, meaning LMI have a current obligation to pay losses (including but not limited to defense expenses) falling with the Aggregate Agreement, *i.e.*, the aggregate excess coverage.  *Id.*, ¶ 13.

### C.    Relevant Language of the LMI Policies

The LMI Policies provide coverage for the Diocese and for parishes, schools, and certain other Roman Catholic entities which lie within the Diocese.[2]  *Id.*, ¶ 14.  An exemplar LMI Policy is attached as Exhibit B to Berringer Decl.  The LMI Policies are "package policies" that provide many different coverages, including property insurance, casualty insurance, and crime insurance. *Id.*, ¶ 17.  Within casualty insurance, LMI insured general liability, liquor liability, automobile liability, and workers' compensation and employers' liability.  *Id.*, ¶ 18.  As relevant here, pursuant to the general liability coverage, LMI promised to pay "all sums" that the Diocese and other insureds become legally obligated to pay through judgments and settlements because of personal injury and for defense and investigation costs relating to both claims and suits. *Id.*, ¶ 19.

The General Liability insuring agreements of the LMI Policies, in relevant part, make clear that LMI will indemnify the Diocese for damages and expenses, including litigation expenses:

---

[2] The Declarations of the LMI Policies state the following as "Name of Assured": "Roman Catholic Diocese of Rockville Centre, and all Legal Entities Therein Over which the same Central Authority Appoints or Controls the Appointment of the Board of Trustees or Similar Body and Exercises Direct, Complete and Active Control over the Finances, Properties, Operations and Activities."  *Id.*, ¶ 15.  Under the section titled "Name of Insured," the LMI Policies state also that "[i]t is agreed that Roman Catholic Diocese of Rockville Centre, et al owns and/or operates Parishes, Schools, Cemeteries and Other Agencies under specific Names, and it is the intention of this Insurance to cover such Parishes, Schools, Cemeteries and Other Agencies or directly connected organizations as Named Assureds."  *Id.*, ¶ 16.

> Underwriters hereby agree, subject to the limitations, terms and conditions
> hereunder mentioned, to indemnify the Assured for *all sums* which the Assured
> *shall be obligated to pay* by reason of the liability imposed upon the Assured by
> law or assumed by the Named Assured under contract or agreement, for damages
> direct or consequential, *and expenses*, all as more fully defined by the term
> "ultimate net loss", on account of personal injuries, including death at any time
> resulting therefrom, suffered *or alleged to have been suffered* by any person or
> persons [ ] arising out of any occurrence happening during the period of Insurance."

*Id.*, ¶ 20.  The primary LMI Policies with policy periods between 1976 and 1986 contain this

language, with minor variations.  *Id.*, ¶ 21.  The term "ultimate net loss" is defined in the LMI

Policies to include litigation and claim expenses:

> The term "ultimate net loss" shall mean the total sum which the Assured becomes
> obligated to pay by reason of personal injury [ ], either through adjudication or
> compromise, after making proper deductions for all recoveries and salvages, and
> shall also include hospital, medical and funeral charges and all sums paid as
> salaries, wages, compensation, fees, charges and law costs, premiums on
> attachment or appeal bonds, interest, *expenses for doctors, lawyers, nurses and
> investigators and other persons, and for litigation, settlement, adjustment and
> investigation of claims and suits* which are paid as a consequence of any occurrence
> covered hereunder. . . .

*Id.*, ¶ 22  (emphasis added).

Under the section titled "Loss Payments," the LMI Policies state: "When it has been

determined that Underwriters are liable under this Insurance, Underwriters shall thereafter

*promptly* reimburse the Assured for all payments made in excess of the [retention] amounts . . ."

*Id.*, ¶ 23 (emphasis added).  The LMI Policies require that LMI "promptly reimburse" payments

made in excess of the Diocese's SIR, regardless of whether those payments are made for

settlements, judgments, investigatory costs, or for the defense of claims or suits.  *Id.*, ¶ 24.

Prior to the enactment of the CVA, workers' compensation claims were the most common

type of claim faced by the Diocese, as shown by the RISX-FACS loss and claim experience report

calculated as of February 28, 2007.  *Id.*, ¶ 25.  The Risx-Facs Report shows the total losses per

annual insurance period, subtracting out the losses excess of a specific retention which would be

separately paid; this reveals the "total aggregate experience," also identified as the "total payments subject to aggregate excess." *Id.*, ¶ 26.

The Workers' Compensation Insuring Agreement of the LMI Policies states that LMI:

hereby agree to indemnify the Assured for financial loss caused by personal injuries to his employees (including occupational disease) when the Assured is legally liable therefor to said employees (including death resulting therefrom) arising out of and in the course of employment by the Assured, provided such injuries are sustained during the continuance of this Insurance.

*Id.*, ¶ 27. The workers' compensation and general liability casualty losses, including defense expenses, all count equally toward the same aggregate excess annual retention and coverage limits, as do auto physical damage claims and all of the other types of claims and losses. *Id.*, ¶ 28.

### D. LMI Previously Made Interim Payments to the Diocese Under the LMI Policies.

LMI made some interim payments (*i.e.*, payments while the particular claim was still open) to the Diocese for workers' compensation claims under the LMI Policies when losses exceeded the retentions. *Id.*, ¶ 29. Moreover, the Risx-Facs Reports on which LMI relied to make claim payments under the LMI Policies do not differentiate between open or closed general liability claims for the calculation of total claim and expense payments by LMI. *See, e.g.,* Ex. D to Berringer Decl. at Gallagher_0000650 to Gallagher_0000658. *Id.*, ¶ 30. All of the payments within the specific excess retention (including but not limited to defense expense) flow into the aggregate retention payments that, when a particular aggregate retention threshold is exceeded, trigger LMI's obligations under the aggregate excess insurance. *Id.*, ¶ 31.

III.   **LEGAL STANDARD**

A.   **Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004).  Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

B.   **Policy Interpretation Standard**

Interpretation of an insurance agreement is a question of law for the court. *VAM Check Cashing Corp. v. Fed. Ins. Co.*, 699 F.3d 727, 729 (2d Cir. 2012).  Courts analyzing the meaning of an insurance policy provision must consider "the reasonable expectation and purpose of the ordinary businessman engaged in the insured's line of business." *Kurtin v. National R.R. Passenger Corp.*, 887 F. Supp. 676, 679 (S.D.N.Y. 1995).  Proper interpretation of an insurance policy "requires consideration of the broader context, namely 'the business purposes sought to be achieved by the parties.'" *In re Sept. 11 Litig.*, 906 F. Supp. 2d 295, 304 (S.D.N.Y. 2012), *aff'd sub nom. World Trade Ctr. Props. LLC v. QBE Int'l Ins. Ltd.*, 627 F. App'x 10 (2d Cir. Sep. 17, 2015).

Every word in the insurance policy is "presumed to have meaning." *URS Corp. v. Zurich Am. Ins. Co.*, 979 N.Y.S.2d 506, 511 (Sup. Ct. N.Y. Cty. 2014) (citing *Bretton v. Mut. of Omaha Ins. Co.*, 110 A.D.2d 46, 492 N.Y.S.2d 760, 763 (1st Dep't 1985), *aff'd*, 66 N.Y.2d 1020, 499

N.Y.S.2d 397 (1985)).  An insurance policy may not be read in a way that would render a term or

provision "mere surplusage."  *Westview Assocs. v. Guar. Nat'l Ins. Co.*, 95 N.Y.2d 334, 717

N.Y.S.2d 75, 77 (2000).  "'Unless otherwise indicated, words should be given the meanings

ordinarily ascribed to them and absurd results should be avoided.'"  *Mastrovincenzo v. City of

N.Y.*, 435 F.3d 78, 104 (2d Cir. 2006) (quoting *World Trade Ctr. Props., LLC v. Hartford Fire Ins.

Co.*, 345 F.3d 154, 184 (2d Cir. 2003)).

And as the fundamental purpose of insurance is to insure, it is a tenet of New York law that

"[i]nsurance contracts are normally construed strictly against the insurer" and "all ambiguity must

be resolved in favor of the policy holder and against the company which issued the policy."

*Kimmins Indus. Serv. Corp. v. Reliance Ins. Co.*, 19 F.3d 78, 81 (2d Cir. 1994).

## IV.    LEGAL ARGUMENT

### A.    The Plain Language of the LMI Policies Requires LMI to Pay Promptly All Loss, Including Defense Costs, If Loss Exceeds a Retention Amount.

#### 1.    LMI Have A Duty to Reimburse Defense Costs Under the LMI Policies for Claims and Suits That Are Potentially Covered.

LMI owe a duty to promptly pay defense costs and expenses in connection with claims and

suits alleging personal injury once losses, including but not limited to costs and expenses, exceed

the applicable retentions.  Although the LMI Policies do not contain a duty to defend, they do

contain a duty to pay defense expenses as an element of the "all sums" and "ultimate net loss" that

LMI promised to pay.

Using its 1976-79 specific excess insurance policy as an example, in "Agreement C –

General Liability," LMI agreed to "Indemnify the Assured for all sums which the Assured shall

be obligated to pay by reason of the liability imposed upon the Assured by law or assumed by the

Named Assured under contract or agreement, for damages direct or consequential, *and expenses*,

all as more fully defined by the term 'ultimate net loss', on account of personal injuries, including

death at any time resulting therefrom, suffered or *alleged to be suffered* by any person or persons.
. . ." Ex. B to Berringer Decl. at DRVC_LMI_00000029.  Thus, LMI must pay "all sums" that the
Diocese is "obligated to pay" on account of personal injuries including "expenses."  The definition
of Ultimate Net Loss includes, among other things, "expenses for doctors, lawyers, nurses and
investigators and other persons, and for litigation, settlement, adjustment and investigation of
claims and suits, which are paid as a consequence of any occurrence covered hereunder."  *Id.* at
DRVC_LMI_00000031 (emphasis added).  Significantly, this broad definition of Ultimate Net
Loss includes attorneys' fees incurred in the investigation of claims, as well as in the defense of
suits.

New York courts have explained that while there is a difference between an insurance
policy containing a duty to defend and one that requires payment of defense expenses, it is a
distinction without a difference with respect to an insurance company's duty to pay:

> [T]he duty to defend *or pay defense expenses* turns solely on whether, as to each of
> the underlying actions, the complaint alleges any facts or grounds that bring the
> action within the liability coverage purchased.  The rule is well settled that the duty
> to defend is broader than the duty to indemnify. . . .   The same allegations that
> trigger a duty to defend trigger an obligation to pay defense costs.  Both an insurer's
> duty to defend and to pay defense costs under liability insurance policies must be
> construed broadly in favor of the policyholder.

*Federal Ins. Co. v. Kozlowski,* 18 A.D.3d 33, 792 N.Y.S.2d 397, 402 (1st Dep't 2005) (emphasis
added, internal citations, quotation marks, and alteration omitted).  *See also Westpoint Int'l, Inc.
v. Am. Int'l S. Ins. Co.*, 71 A.D.3d 561, 899 N.Y.S.2d 8, 9 (1st Dep't 2010) ("Although defendant
makes much of it, the fact that the policy is not a 'duty to defend' policy is not dispositive here,
since the policy expressly requires defendant to advance defense costs. . . . Having failed to
demonstrate that there is no possibility of coverage, defendant cannot avoid its obligation to
advance defense costs.").  The Insuring Agreement of the LMI Policies—in which LMI agrees to
indemnify the Diocese for expenses incurred on account of personal injuries "suffered or alleged

to have been suffered"—is consistent with this New York law and the traditional duty to defend rule.

Likewise, in *Port Authority of New York & New Jersey v. Brickman Group Ltd., LLC*, 181 A.D.3d 1, 115 N.Y.S.3d 246, 257 (1st Dep't 2019), the court considered whether the Port Authority was entitled to reimbursement of defense expenses as an additional insured under Brickman Group's insurance policy with ACE.  After citing the policy language requiring ACE to pay "'ultimate net loss' in excess of the 'retained limit'" and "loss adjustment expense," the Court explained that "[n]otwithstanding that the ACE policy does not impose on the insurer any duty to defend, the policy, as amended by endorsement No. 29, does require the insurer to pay 'loss adjustment expense' in excess of the retained limit, up to the policy limits." *Id.*, 181 A.D.3d at 17, 115 N.Y.S.3d 246 at 258.  The underlying case had been finally adjudicated in a manner that made clear that the Port Authority had no indemnity coverage under the ACE policy as an additional insured because the loss did not arise out of Brickman's operations, nor was the loss caused by Brickman Group's acts or omissions; however, the *allegations of the complaint* had shown the *potential* for coverage.  Because the definition of loss adjustment expense included the costs of defending any suit to which the policy applies, without excluding the cost of defending non-covered claims, all defense costs were covered and no allocation between covered and uncovered defense expense was warranted.  *Id.*, 181 A.D.3d at 19, 115 N.Y.S.3d 246 at 259.

The Court in *Port Authority* highlighted that its decision was consistent with *Kozlowski* and *Westpoint*, cited above, but also noted that unlike *Kozlowski*, "nothing in the ACE policy suggests that the insurer may avoid bearing the cost of defending noncovered claims asserted alongside covered claims in a 'suit' as defined by the policy." *Id.*, 181 A.D.3d at 20 n.20, 115 N.Y.S.3d 246 at 260 n. 20.  The Court further recognized "that the trend of recent case law, in

situations where there is a duty to reimburse defense costs but no duty to defend, is to 'apply traditional duty to defend analysis when determining whether insurers must advance or reimburse insureds' defense expenses.'" *Id.*, 181 A.D.3d at 21, 115 N.Y.S.3d 246 at 261 (quoting Douglas R. Richmond, *Liability Insurance and the Duty to Pay Defense Expenses Versus the Duty to Defend*, 52 Tort Trial & Ins. Prac. L. J. 1, 9 (2016)). Notably, the article cited by the Appellate Division not only identified the application of the traditional rule as a recent trend, but also as the majority rule: "most courts apply traditional duty to defend analysis when determining whether insurers must advance or reimburse insureds' defense expenses." *Id.*

In summary, LMI promised to pay expenses in connection with bodily injury "suffered or alleged to have been suffered" by underlying claimants. Accordingly, under New York law, LMI owe a duty to pay defense costs as an element of "ultimate net loss" whenever there is the potential for coverage, consistent with the traditional duty to defend rule. The essential question for this motion is *when* LMI must pay those defense expenses to the Diocese, and as discussed below, the answer is "promptly" if the losses are above any retention.

### 2. LMI Must Pay Promptly Defense Expenses Incurred by the Diocese If Losses (Including Defense Expenses) Exceed the Retention.

Under the section titled "Loss Payments," the LMI Policies plainly state that LMI must "promptly reimburse" the Diocese "for all payments made in excess of the [retention] amounts . . ." Ex. B to Berringer Decl. at DRVC _LMI_00000038. The term "ultimate net loss" is defined as "the total sum which the Assured ***becomes obligated to pay*** by reason of personal injury or property damage claims, either through adjudication or compromise . . . ." (emphasis added). In *Consolidated Edison v. Aetna Insurance Co.*, the court considered the identical definition of "ultimate net loss" and flatly rejected the argument that the insurance policy required the policyholder to make actual payment of the retained limit:

> Nothing in the Mutual Umbrella policy required Consolidated Edison to pay the first $500,000 from its own pocket before reimbursement of the next $500,000 was required under that policy. The language defining "ultimate net loss" is quite to the contrary.

*Id*.

The Diocese is "obligated to pay" its defense costs *as soon as they are incurred*, and LMI must "promptly reimburse" those defense expenses once they exceed the retentions and the losses fall within either the Specific Excess coverage or the Aggregate Excess coverage. The word "promptly" is commonly defined as "in a prompt manner; without delay; very quickly or immediately." There is no ambiguity about when LMI is obligated to reimburse the Diocese for payments made in excess of the retention amounts. If there were any ambiguity, it "must be resolved in favor of the policy holder and against the company which issued the policy." *Kimmins*, 19 F.3d at 81. "Promptly" does not mean at the end of an underlying litigation that could take numerous years. Rather, the term must be given the meaning ordinarily ascribed to it, or as the ordinary businessperson would understand it.

Even if the LMI Policies had omitted this plain and clear contractual commitment of prompt reimbursement, New York law would have required prompt payment of defense expenses in excess of the retentions. Absent express language to the contrary, insurance companies have a duty to reimburse defense costs as they are incurred because that is when the policyholder becomes legally obligated to pay them. In *Federal Insurance Company v. Kozlowski*, the Appellate Division cited decisions from the Ninth Circuit and the Third Circuit holding that because the insurance policy provides coverage for loss that a policyholder shall become "legally obligated to pay," and because the policyholder becomes "legally obligated to pay" defense costs "as soon as the services are rendered," the insurance company owes coverage for the defense expenses as they are incurred.

*Id.*, 18 A.D.3d at 42, 792 N.Y.S.2d at 403-04, citing *Gon v. First State Insurance Co.*, 871 F.2d

863 (9th Cir. 1989) and *Little v. MGIC Indemnity Corp.*, 836 F.2d 789, 793 (3d Cir. 1987).

In *Port Authority*, an Appellate Division case that followed *Kozlowski*, the Court found it

important that the requirement to pay defense expense applied to a "suit to which this policy

applies" and that the definition of "suit" included an action in which damages because of bodily

injury are *alleged*:

> Finally, we acknowledge that, in each of the cases cited in the foregoing discussion, the court appears to have determined that the insured was entitled to have the insurer pay its defense costs while the question of the insured's liability was still being litigated in the underlying proceedings.  In this case, by contrast, the Port Authority chose not to press its claim against ACE and Everest for reimbursement of its defense costs until after its liability had been adjudicated in the underlying actions and – as a result of the exoneration of Brickman Group and Metro – had been determined to fall outside the scope of its additional insured coverage.  Under the terms of the ACE policy, the timing of the Port Authority's demand for reimbursement does not defeat its claim for reimbursement of its defense costs through the time its liability was adjudicated in the underlying actions.  As previously discussed, the ACE policy entitles the insured to coverage of the costs it incurred in defending "any . . . 'suit' to which this policy applies" and the policy defines "suit" to mean an action "in which damages because of 'bodily injury' . . . to which this insurance applies are *alleged*" (emphasis added).  To reiterate, until the jury rendered the verdict adverse to the Port Authority, each of the underlying actions remained a "'suit' to which th[e] [ACE] policy applie[d]" by reason of the allegations therein against Brickman Group and Metro.

*Port Authority*, 181 A.D.3d at 22, 115 N.Y.S.3d 246 at 261-62.  Thus, ACE was obligated "to

reimburse the Port Authority for the costs it reasonably incurred, in excess of the 'retained limit'

under the ACE policy, in defending the underlying actions from their inception through April 27,

2017" when there was no longer a possibility of coverage.  *Id.*, 181 A.D.3d at 23, 115 N.Y.S.3d

246 at 262.  The insurance policy language at issue here is at least as broad as the language

considered in *Port Authority*, as it covers the costs of defense not just of suits, but also of claims.

And the insuring agreement includes within its description of ultimate net loss defense expenses

on account of personal injuries "suffered *or alleged to have been suffered* by any person or persons

[ ] arising out of any occurrence happening during the period of Insurance."  Finally, and most importantly, the insurance policy commits LMI to an obligation of prompt reimbursement as soon as the retention is exceeded.

In addition to the state appellate precedent of *Kozlowski* and *Port Authority*, federal district court decisions from the Southern District of New York decided prior to *Kozlowski* reached the same conclusion—when there is a duty to pay defense costs, they must be paid as they are incurred. *See Nu-Way Envtl. v. Planet Ins. Co.*, 95 Civ. 573, 1997 U.S. Dist. LEXIS 11884, at *9 (S.D.N.Y. Aug. 5, 1997) (holding that "where the insurance policy does not impose a duty to defend, provides for payment of defense costs, and is silent as to the timing of payment of such costs, the insurer has a duty of contemporaneous payment of defense costs"); *McGinniss v. Employers Reinsurance Corp.*, 648 F. Supp. 1263, 1271 (S.D.N.Y. 1986) (holding that where loss was defined as "amounts which the insured becomes legally obligated to pay," defendant had an obligation to pay defense costs as incurred); *Pepsico v. Continental Cas. Co.,* 640 F. Supp. 656, 659 (S.D.N.Y. 1986) (finding a duty to pay defense costs as they are incurred).

Indeed, this is the majority rule nationwide.  For example, in *McCuen v. American Cas. Co. of Reading, Pa.*, 946 F.2d 1401, 1406 (8th Cir. 1991), the court noted that the policy obligated the insurance company to pay all losses the insureds become legally obligated to pay including in the defense of legal actions, claims or proceedings, and "[i]n the absence of other provisions to the contrary, this clause would obligate American Casualty to pay the insureds' legal fees as incurred." Other courts have reached the same conclusion using similar reasoning.  *See Little v. MGIC Indemnity Corp., et al.*, 836 F.2d 789 (3d Cir. 1987) (requiring the insurance company to pay defense expense as it comes due); *Okada v. Magic Indem. Corp.*, 823 F.2d 276, 282 (9th Cir. 1986) (affirming district court's ruling that the insurance company "must make contemporaneous

- 14 -

payments for legal defense on claims covered by the policy"); *Fight Against Coercive Tactics Network v. Coregis Ins. Co.*, 926 F. Supp. 1426, 1437 (D. Colo. 1996) (holding that the insurance company has a "duty to pay for legal expenses and costs when they are incurred and legal fees when they are billed relating to the defense of the [underlying] actions"); *FSLIC v. Burdette,* 718 F. Supp. 649, 661 (E.D. Tenn. 1989) (the language "'shall become legally obligated to pay' [ ] clearly indicates a duty on the insurer to pay expenses and costs when they are incurred and fees when they are billed, for in such instances the [insureds] have become legally obligated to pay them").

In a case decided prior to *Kozlowski* and *Port Authority*, the Second Circuit considered an appeal of a district court decision holding that, under policies containing a duty to reimburse defense costs but not a duty to defend, the insurance companies only had a duty to reimburse defense costs for claims that are established to be covered through judgment and settlement, and not for claims only potentially falling within the policy's coverage. *See Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*, 73 F.3d 1178, 1219 (2d Cir. 1995). The only precedent cited by the Second Circuit was the Ninth Circuit's decision in *Okada v. MGIC Indemnity Corp.*, 823 F.2d 276, 280 (9th Cir. 1986), which it declined to follow. The Second Circuit cited no caselaw whatsoever to support its decision on that point, which was a brief discussion at the end of a long opinion. The later-decided *Kozlowski* case stands in stark contrast to *Stonewall*, as the Appellate Division actively followed the Ninth Circuit jurisprudence that the Second Circuit declined to follow:

> In *Gon v. First State Ins. Co.* (871 F2d 863 [9th Cir 1989]), the insurer who issued a directors and officers liability policy argued that absent a duty to defend, it did not have to pay legal defense expenses as incurred. The court held that because the policy provided coverage for loss that the insured shall become "legally obligated" to pay and an insured becomes legally obligated to pay legal expenses as soon as the services are rendered, the insurer was required to pay defense expenses as

incurred (*id.* at 868).   The court also held that defense expenses were subject to apportionment between covered and noncovered claims (*id.*; *see Okada v. MGIC Indem. Corp.*, 823 F2d 276 [9th Cir. 1986]).

*Kozlowski*, 18 A.D.3d at 42, 792 N.Y.S.2d at 403.

To the extent *Stonewall* conflicts with *Kozlowski* and *Port Authority*, the later-decided New York Appellate Division decisions must prevail as a more authoritative prediction of New York substantive law.   When federal courts act in their diversity jurisdiction, they must apply applicable substantive state law.   *Erie Railroad v. Tomkins*, 304 U.S. 64 (1938).   The United States Supreme Court has instructed that "the highest court of the state is the final arbiter of what is state law" but in the absence of state high court precedent, "[w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."   *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236-37 (1940).   The purpose of that rule is "to avoid the maintenance within a state of two divergent or conflicting systems of law, one to be applied in state courts, the other to be availed of in the federal courts."   *Id.* at 236.   Just as a state trial court would be constrained to follow *Kozlowski* and *Port Authority*, so should this Court.   The decisions of state intermediate appellate courts are "helpful indicators" of how the state's highest court would rule that cannot be lightly disregarded.   *DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005).   In the absence of precedent from the New York Court of Appeals, this Court should follow *Kozlowski* and *Port Authority*.

In summary, there is clear policy language requiring prompt reimbursement of losses, including defense expenses, as soon as those losses reach LMI's layers of coverage.   Even absent that language, the law of New York as established in *Kozlowski* and *Port Authority*, as applied both in New York and nationwide, requires the payment of defense expenses during the pendency

of an underlying action or actions, as soon as the retention is exceeded, with that payment requirement enduring until the matter is concluded or until any potential for coverage is eliminated.

**B.      The Diocese's Interpretation of the Policy Language is Commercially Reasonable.**

Courts must interpret insurance policies "according to the reasonable expectations and purposes of ordinary businesspeople when making ordinary business contracts." *City of N.Y. v. Evanston Ins. Co.*, 39 A.D.3d 153, 830 N.Y.S.2d 299, 302 (2d Dep't 2007). A court should not interpret a contract in a way that would be "commercially unreasonable, or contrary to the reasonable expectations of the parties." *In re Lipper Holdings, LLC v. Trident Holdings, LLC*, 1 A.D. 3d 170, 766 N.Y.S.2d 561, 562 (1st Dep't 2003) (internal citations omitted).

The LMI Policies explicitly state that LMI must "promptly reimburse" all types of loss as soon as the retention is exceeded. Ex. B to Berringer Decl., General Conditions, "Loss Payments." An ordinary business person would understand this policy provision to require LMI to reimburse losses, including any defense costs, that are above the retention—and to do it promptly. LMI's interpretation of the LMI Policies as *not* obligating LMI to pay defense costs as incurred, but instead only (perhaps) at the conclusion of a claim or suit that could last for years, is not reasonable. Under that theory, the requirement of "prompt" payment would be undermined, making the Diocese potentially wait years for reimbursement even when defense costs are in excess of LMI's specific excess or aggregate excess retentions. Put simply, LMI's proposed interpretation is not commercially reasonable. *See Nu-way.*, 1997 U.S. Dist. LEXIS 11884, at *9 ("without contemporaneous payment of defense costs the insurance would not truly protect the insureds from financial harm caused by suits against them"); *McGinniss*, 648 F. Supp. at 1271 (same). The LMI Policies do not state that defense costs *will not* be paid as incurred, but instead, that they will be promptly paid once the applicable retention is satisfied.

**C.** **The Prior Course of Performance Supports the Diocese's Interpretation of the LMI Policies.**

To the extent that the language of the LMI Policies is deemed ambiguous, the prior course of performance between the Diocese and LMI supports LMI's obligation to pay defense costs as incurred. *See Yangming Marine Transport Corp. v. East Coast Chemicals & Paper Corp.*, 643 F. Supp. 995, 1000 (S.D.N.Y. 1986) ("Evidence of a prior course of dealing between the parties and evidence of trade usage is admissible to aid in the interpretation of the parties' agreement"); *Fed. Ins. Co. v. Americas Ins. Co.*, 258 A.D.2d 39, 691 N.Y.S.2d 508, 512 (1st Dep't 1999) ("the parties' course of performance under the contract is considered to be the most persuasive evidence of the agreed intention of the parties"); *American Home Products Corp. v. Liberty Mut. Ins. Co.*, 565 F. Supp. 1485, 1503 (S.D.N.Y. 1983) ("The New York courts have frequently resorted to the conduct of the parties in determining a contract's meaning, and insurance contracts are no exception to this practice.")

LMI do not dispute that they have made interim payments to the Diocese relating to Worker's Compensation Claims, which is the most common type of claim submitted to LMI under the LMI Policies.  It is unclear from the discovery whether there were any general liability claims that had defense expenses that exceeded the $100,000 retention on the Specific Excess coverage, but there were workers' compensation claims that had defense and indemnity amounts paid by the Diocese and reimbursed by LMI as the claim proceeded, in the ordinary course of business.  The documents on which LMI rely do not differentiate or exclude payments for open or closed claims or for defense costs, settlements, or judgments when computing whether ultimate net loss exceeds the retentions. Ex. D, Risx-Facs Report.  Accordingly, the parties' prior course of dealing supports the Diocese's interpretation of the plain language of the LMI Policies.

D.     **Under New York Law, the Insolvency or Bankruptcy of the Diocese Does Not Release LMI from Its Obligation To Pay.**

While the Diocese has paid and then sought reimbursement of losses within LMI's layer of insurance, Section 3420 of the New York Insurance Law, provides that "the insolvency or bankruptcy of the [policyholder], shall not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of and within the coverage of such policy or contract."  Accordingly, LMI remains liable for losses within its layer regardless of whether the Diocese remains able to pay the retentions and losses in excess of the retentions.  LMI's obligations to pay losses within its layers of insurance remain undiminished.  Section 3420 is deemed included in every insurance policy by operation of New York law; nevertheless, the LMI Policies in their Bankruptcy and Insolvency provision likewise provide that "[i]n the event of the bankruptcy or insolvency of the Assured or any entity comprising the Assured, the Underwriters shall not be relieved of the payment of any claims here under because of such bankruptcy or insolvency."  Ex. B to Berringer Decl. at DRVC_LMI_00000037.

Courts have concluded that Section 3420(a) relieves a bankruptcy debtor of any duty to pay loss in order to get the benefit of its insurance.  *See Admiral Ins. Co. v. Grace Indus., Inc.*, 409 B.R. 275, 282 (E.D.N.Y. 2009) ("[B]ecause the bankruptcy clause must be given full force and effect . . . , the policy's SIR endorsement cannot be construed under any theory as precluding [the policyholder] from coverage if it cannot fund the SIR as contractually required."); *Am. Safety Indem. Co. v. Vanderveer Estates Holding, LLC*, 328 B.R. 18, 24-25 (Bankr. E.D.N.Y. 2005) ("[I]njured parties shall be compensated whether or not a bankrupt debtor pays its self-insured retention"), *aff'd sub nom. Am. Safety Indem. Co. v. Official Comm. of Unsecured Creditors*, 05 CV 5877, 2006 U.S. Dist. LEXIS 101425, at 11 (E.D.N.Y. Oct. 3, 2006); *Rollo v. Servico N.Y., Inc.*, 79 A.D.3d 1799, 914 N.Y.S.2d 811, 813 (4th Dep't 2010) ("[The] insurer remains obligated

to pay damages for injuries or losses covered under the policy, despite the fact that defendants'
obligation to satisfy the SIR was discharged through the bankruptcy proceedings. . . .").

This New York precedent is consistent with the overwhelming majority of the precedent
nationwide. *See*, *e.g.*, *Rosciti v. Ins. Co. of Pa.*, 659 F.3d 92 (1st Cir. 2011) (finding that a Retained
Limit provision requiring "complete expenditure of retained limits by means of payments for
judgments, settlements, or defense costs" must yield to public policy that "prevent[s] insurance
companies from avoiding their obligations when an insolvent insured cannot make an expenditure
towards discharging liability," even in the absence of a statute); *Gulf Underwriters v. Burris*, 674
F.3d 999 (8th Cir. 2012) (construing ambiguous insurance policy language in favor of coverage to
conclude that direct actions by claimants not barred due to any failure of the policyholder to pay
the SIR); *Sturgill v. Beach at Mason Ltd. Partnership*, Civ. Action No. 1:14cv0784, 2015 WL
6163787 (S.D. Ohio Oct. 20, 2015) (collecting cases demonstrating "the great weight of authority
. . . that the insured's failure to pay a SIR does not relieve the insurer of its contractual duties under
the policy").

Thus, whether or not the retention amounts are actually paid, or merely incurred, LMI
remains liable for losses within its layers of coverage.  The Diocese has not taken the position that
LMI must drop down to pay losses within the retention, but once losses (defense expense,
settlements, judgments, and all of the other amounts that are within "ultimate net loss") exceed the
retention amounts, it does not matter if the Diocese has made actual payment of those losses in
excess of the retention before seeking coverage from LMI.

## V.      CONCLUSION

For all of the foregoing reasons, the Diocese respectfully requests that the Court enter partial summary judgment in the Diocese's favor on its Declaratory Judgment Count against LMI regarding LMI's duty to pay defense costs as they are incurred, as requested in subsection (d) of the Diocese's Prayer for Relief in its Amended Complaint.


Dated: April 11, 2024                                        Respectfully submitted,

                                                             */s/ John B. Berringer*
                                                             John B. Berringer, Esq.
                                                             599 Lexington Avenue
                                                             New York, NY 10022
                                                             Telephone: (212) 521-5400
                                                             Facsimile: (212) 521-5450
                                                             E-mail: jberringer@reedsmith.com

                                                             -and-

                                                             REED SMITH LLP
                                                             Timothy P. Law, Esq.
                                                             Esther Kim, Esq.
                                                             Three Logan Square
                                                             1717 Arch Street, Suite 3100
                                                             Philadelphia, PA 19103
                                                             Telephone: (215) 851-8100
                                                             Facsimile: (215) 851-1420
                                                             E-mail: tlaw@reedsmith.com
                                                             E-mail: esther.kim@reedsmith.com